TERRI F. LOVE, Judge.
|! This appeal arises from a petition for divorce. The trial court denied Meredith Harris’ request for interim spousal support. We find that the trial court did not abuse its discretion in denying interim spousal support and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Duncan Molony filed for a divorce from Meredith Harris. Mr. Molony also sought judicial resolution of ancillary matters, including interim spousal support.[1] The trial court issued a temporary restraining order enjoining Ms. Harris from alienating, encumbering, or disposing of any of the parties’ community property. Ms. Harris filed an answer, as well as a recon-ventional demand seeking a divorce and, inter alia, interim spousal support. The trial court issued a second temporary restraining order enjoining Mr. Molony from alienating, encumbering, or disposing of any of the parties’ community property.
An interim consent judgment (“ICJ”) was entered by the trial court, which ratified the parties’ agreement regarding temporary shared physical custody of their minor child. Neither the issue of child support, nor that of spousal support was addressed by the ICJ. The ICJ also ordered Ms. Harris to attend Alcoholics |2Anonymous (“AA”) meetings daily as well as individual counseling and therapy sessions. Following the ICJ, the trial court entered a judgment, which increased Ms. Harris’ periods of physical custody of the parties’ minor child, and kept the requirement that Ms. Harris attend AA meetings. Ms. Harris subsequently moved to have the Court set child support and interim *756 spousal support. Mr. Molony did not pursue interim spousal support.
The trial court denied Ms. Harris’ request for interim spousal support and found that Ms. Harris did not have the requisite need for an award of interim spousal support. In addition, the trial court stated that Mr. Molony had “minimal ability” to pay interim spousal support to Ms. Harris, but that Mr. Molony’s ability to pay was offset by the fact that Ms. Harris’ work hours were reduced because of her AA attendance. Ms. Harris timely sought a devolutive appeal, which was granted.[2]

STANDARD OF REVIEW

“The trial court is vested with much discretion in determining awards of spousal support.” Rodriguez v. Rodriguez, 02-0439, p. 9 (La.App. 4 Cir. 1/29/03), 839 So.2d 368, 374. “Such determinations will not be disturbed absent a clear abuse of discretion.” Id. As to interim spousal support specifically, “[a]n abuse of discretion will not be found if the record supports the trial court’s conclusions about the means of the payor spouse and his or her ability to pay.” Lambert v. Lambert, 06-2399, p. 10-11 (La.App. 1 Cir. 3/23/07), 960 So.2d 921, 928.
Factual findings shall not be set aside absent manifest error. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). To substantiate reversal, the appellate court must find from the record that there is no reasonable factual basis for the | ¿finding of the trial court and that the record establishes that the finding is clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).

INTERIM SPOUSAL SUPPORT/La. C.C. art. 113

As her sole assignment of error, Ms. Harris alleges that the trial court erred in failing to award interim spousal support.
An award of interim spousal support is governed by La. C.C. art. 113,[3] which states in pertinent part:
[T]he court may award a party an interim spousal support allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage, which award of interim spousal support allowance shall terminate upon the rendition of a judgment of divorce.
Thus, the trial court examines the parties’ circumstances utilizing three criteria when determining whether interim spousal support is warranted: 1) the claimant’s need, 2) the other spouse’s ability to pay, and 3) the standard of living of the parties during the marriage.

CLAIMANT’S NEED

Ms. Harris asserts that the trial court erred in failing to award interim spousal support.
“A spouse demonstrates a need for alimony pendente lite if she demonstrates that she lacks sufficient income to maintain the style or standard of living that she enjoyed while residing with [sic] other spouse during the marriage.” Dagley v. Dagley, 96-1796 (La.App. 4 Cir. 5/21/97), 695 So.2d 521, 522-23. “Interim *757 spousal support is specifically designed to maintain the status quo during litigation and, as such, the burden is on the claimant to prove her entitlement to such 14support.” Koeniger v. Koeniger, 08-1054, p. 5 (La.App. 4 Cir. 3/4/09), 10 So.3d 271, 274.

Calculation of Ms. Harris’ Adjusted Gross Income

Ms. Harris was self-employed, and the parties disagreed as to her adjusted gross income.[4] Ms. Harris asserts that the trial court erred by refusing to hear testimony from Ms. Harris’ accountant, Debora Henry, as to the preparation of Ms. Harris’ 2008 business tax return. In pretrial filings, Ms. Harris did not disclose Ms. Henry as a witness prior to trial.
“A trial judge has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible; his judgment will not be disturbed on appeal unless manifestly erroneous.” Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, 459 (La.App. 1st Cir.1987). The trial court did not allow Ms. Henry to testify, but asked counsel for both parties to stipulate that Ms. Henry prepared the drafts of Ms. Harris’ 2008 business tax return, to which the parties agreed. Thus, the trial court was acting within its discretion.
Ms. Harris also contends that the trial court erroneously imputed her income by not deducting from her gross receipts all of the business expenses reflected on her tax return. However, Mr. Molony’s expert CPA, Kern Schaffer (who was properly disclosed as an expert witness prior to trial), opined that several of the business expenses claimed by Ms. Harris on her 2007 tax return were inflated to artificially reduce her actual adjusted gross income. Mr. Schaffer also noted that Ms. Harris’ S-Corporation taxes did not seem to be set up correctly because the corporation should be paying Social Security. The trial court has wide diseretion | sin imputing income to a claimant spouse where that spouse’s income is uncertain. See Kirkpatrick v. Kirkpatrick, 41,851, pp. 6-7 (La.App. 2 Cir. 1/24/07), 948 So.2d 390, 394-95. “[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Rosell, 549 So.2d at 844. Accordingly, the trial court did not err in its factual finding as to Ms. Harris’ adjusted gross income.

Calculation of Ms. Harris’ Net Income

Ms. Harris asserts that the trial court erred in calculating her net monthly income. Ms. Harris’ calculations of her net monthly income differ from the calculations of the trial court, primarily because the trial court did not recognize all of the business expenses claimed by Ms. Harris. As previously noted, the trial court’s discretion includes the ability to impute an adjusted gross income to Ms. Harris based on the evidence and testimony presented at trial. Because the trial court and Ms. Harris began with differing figures for Ms. Harris’ adjusted gross income, Ms. Harris and the trial court also reach different figures for Ms. Harris’ net monthly income after deducting her recurring monthly expenses.
Ms. Harris, in her calculations, deducted her telephone, internet, and fax expenses *758 twice, once as a business expense in determining her adjusted gross income, and again as a recurring monthly expense in determining her net monthly income. Accordingly, the trial court had the discretion to allow Ms. Harris to deduct her telephone, internet, and fax expenses once and the trial court made that deduction when computing Ms. Harris’ adjusted gross income.
Further, Ms. Harris points to the fact that she offered testimony that her monthly credit card payments total $2,000.00, as opposed to the $1,000.00 ^reflected on her Income and Expense Affidavit. Ms. Harris claims that the trial court failed to acknowledge the additional monthly expense in the amount of $1,000.00, and thereby erred in calculating her net monthly income. However, given the wide latitude the trial court has in making factual findings when presented with conflicting evidence and testimony, the trial court’s decision to allow Ms. Harris a $1,000.00 monthly credit card expense does not constitute reversible error.
The trial court also noted that Ms. Harris receives between $3,000 and $4,000 from her mother every month. Ms. Harris offered testimony tentatively describing the money received from her mother as an advance on her inheritance. Ms. Harris testified that she used the money from her mother to pay the shortfall between her monthly income and her monthly expenses. However, on cross-examination, Ms. Harris testified that she used the money from her mother to pay her legal bills.[5]
The trial court’s determination was based on the evidence submitted and testimony offered by both parties as to Ms. Harris’ actual net monthly income. As such, we do not find that the trial court abused its discretion or committed manifest error.
Ms. Harris’ Gross Income for Child Support and Spousal Support
Ms. Harris asserts that the trial court erred in its calculation of her adjusted gross income because it attributed different figures to her in the judgment awarding child support and in the reasons for judgment denying interim spousal support. In the judgment awarding child support, the trial court imputes an adjusted gross 17income of $5,684.85 to Ms. Harris; meanwhile, in the reasons for judgment denying interim spousal support, the trial court did not specify what adjusted gross income was imputed to Ms. Harris. Rather, the reasons for judgment denying interim spousal support only reflects the gross income imputed to Ms. Harris (in the amount of $6,666.00) and the net income imputed to Ms. Harris (in the amount of $6,460.03).
The record, when viewed in its entirety, indicates that the trial court did make mathematical errors in both the judgment awarding child support and the reasons for judgment denying interim spousal support.[6] These errors, however, do not re- *759 suit in a significant reduction or inflation of Ms. Harris’ adjusted gross income for spousal support purposes. Had the trial court properly ascribed those business expenses of Ms. Harris, which it recognized as legitimate, to her gross income in the judgment awarding child support (as it did in the reasons for judgment denying interim spousal support), then the difference between the figures in the two judgments would be inconsequential. Accordingly, the mathematical errors made by the trial court amount to harmless error.

Inclusion of Child Support from Previous Marriage

Ms. Harris contends that the trial court committed legal error by including the child support she receives from a child born prior to her marriage to Mr. Molony when calculating her monthly income. Ms. Hams presents two grounds |supon which she bases her argument that the trial court erred in this regard. First, Ms. Harris points to La. R.S. 9:315(C)(3)(d)(i), which specifies that the determination of a parent’s gross income should not include child support received for purposes of determining that parent’s child support obligation. Ms. Harris ignores the fact that La. R.S. 9:315 references child support and that spousal support is the subject of a different section of La. R.S. Title 9.[7] Consequently, La. R.S. 9:315(C)(3)(d)(i) does not apply to the trial court’s determination of Ms. Harris’ income for spousal support purposes.
Ms. Harris cites Prestenback v. Prestenback, 08-0457 (La.App. 1 Cir. 11/18/09), 9 So.3d 172, as authority for interpreting La. R.S. 9:315(C)(3)(d)(i) as applicable to spousal support determinations, and avers that this Court should follow the First Circuit and hold that La. R.S. 9:315, which by its plain language concerns child support, also governs spousal support determinations.[8] Further, Ms. Harris fails to acknowledge this Court’s ruling that child support received by a claimant spouse has been credited against her monthly expenses. See Pellerin v. Pellerin, 97-2085, p. 10 (La.App. 4 Cir. 6/17/98), 715 So.2d 617, 622-23. In Pellerin, this Court found the trial court’s failure to apply child support received by the claimant towards her *760 monthly expenses before considering the need for spousal support constituted manifest error, because certain expenses, which were included Uin the claimant’s expense itemization, were also included in the calculation of child support due her. Id.
Second, Ms. Harris claims that the trial court did not include Ms. Harris’ expenses for her child from a previous marriage in calculating her total monthly expenses, and for this reason the trial court erred by including her child support as income. The record reveals, however, that the trial court took into account Ms. Harris’ expenses for her other child when it calculated her total monthly expenses.[9] In doing so, the trial court followed Pellerin, where this Court recalculated interim spousal support to include child support as a part of the claimant spouse’s means of meeting monthly expenses where the claimant spouse’s expenses include expenses of the child for which support payments are received. See Pellerin, 97-2085, p. 10, 715 So.2d at 622-23.[10]

Attributing Full-Time Earning Capacity to Ms. Hairis

Ms. Harris alleges that the trial court abused its discretion in finding that Ms. Harris was not voluntarily underemployed, but acknowledges her inability to work full-time due to her court ordered attendance at AA meetings but nevertheless imputing a full-time earning capacity. Ms. Harris argues that although the trial court found Ms. Harris was not voluntarily underemployed, it effectively treated her that way when it offset her reduced working hours by Mr. Molony’s marginal ability to pay interim spousal support. Mr. Molo-ny counters that it was within the trial court’s discretion to consider Ms. Harris’ reduced work hours, and that the Imtrial court was correct to not prejudice Mr. Molony because of Ms. Harris’ need to attend AA meetings.
The trial court specifically found that “but for Ms. Harris’ addiction, “she would more likely than not increase her number of patients.” As such, “Mr. Molony should not be penalized at this time for Ms. Harris’ inability to work full time due to her alcoholism.” This Court has previously held that a trial court’s determination of an interim spousal support award “requires consideration of ... the claimant spouse’s immediate employment history and capacity for self support.” Goldberg v. Goldberg, 96-2145 (La.App. 4 Cir. 7/23/97), 698 So.2d 63, 66. The record supports the reasonableness of the trial court’s finding that Ms. Harris would be capable of earning additional monetary support were it not for her alcoholism. The trial court found that Mr. Molony had little ability to pay and decided not to penalize him because of Ms. Harris’ need to attend AA meetings, which the trial court found lowered her income. Therefore, we do not find an abuse of discretion.
Accordingly, the trial court imputed a gross monthly income to Ms. Harris, and then deducted those business expenses *761 claimed by Ms. Harris that the trial court found to be legitimate, as well as tax payments, to determine Ms. Harris’ net monthly income. Ms. Harris is self-employed; thus, determining her net monthly income was more complicated than reading a W-2 or pay stub. The trial court found that Ms. Harris’ net monthly income was more than her total monthly expenses. Ms. Harris claims that the trial court’s reasons for judgment do not make a definitive determination as to a need for interim spousal support. While the trial court’s reasoning lacks a definitive statement that Ms. Harris had no need for interim spousal support, the calculations made therein of Ms. Harris’ monthly |nincome and expenses demonstrate that she has no need since her income was determined by the trial court to be greater than her expenses. Because Ms. Harris failed to prove her need for interim spousal support, it was within the trial court’s discretion to conclude that Ms. Harris had no need for interim spousal support based on the evidence and testimony.

SPOUSE’S ABILITY TO PAY

The ability of the spouse to pay interim spousal support exists if money remains after all monthly expenses have been paid, which includes deducting from that spouse’s net monthly income the combined monthly expenses for that spouse and his or her children, including any child support obligation. See Lambert, 06-2399, p. 14, 960 So.2d at 930. Further, the payor spouse’s inability to pay precludes an award of interim spousal support to the claimant spouse even where the claimant has demonstrated need. See Derouen v. Derouen, 04-1137, p. 7 (La.App. 3 Cir. 2/2/05), 893 So.2d 981, 985-86.

Calculation of Mr. Molony’s Income

Ms. Harris asserts that the trial court erred in relying on Mr. Molony’s testimony regarding his income, as opposed to the paycheck stub that was offered into evidence. Ms. Harris claims that Mr. Molo-ny’s gross monthly income is $9,324.45 based upon the $4,303.59 reflected on Mr. Molony’s April 15, 2009 paystub for that pay period. Ms. Harris insists that Mr. Harris is paid every two weeks, or 26 pay periods per year, which is the basis for her calculation of his monthly income ($4,303.59 times 26, divided by 12). Mr. Molony testified, however, that he is paid twice per month, not every two weeks. Further, Mr. Molony’s April 15, 2009 pays-tub reflects a pay period of April 1, 2009, through April 15, 2009, which means he is paid twice per month, for a total of only 24 pay |12periods per year.[11] Accordingly, Ms. Harris’ assertion regarding Mr. Molo-ny’s gross monthly income is without merit.
Moreover, it is within the trial court’s discretion, based on the evidence and testimony before it, to make a determination regarding Mr. Molony’s income. The record reveals that the gross monthly income imputed by the trial court to Mr. Molony, $8,240.45, does differ from the base earnings reflected on Mr. Molony’s April 15, 2009 paycheck for that pay period. Testimony was offered, however, that Mr. Molo-ny had received two one-time bonuses in 2009 totaling $5,619.69, and the $8,240.45 figure accepted by the trial court was based on Mr. Molony’s annual salary with those bonuses added into the calculation *762 ($5,619.69 added to $94,500.00, divided by 12).[12] Thus, the trial court’s finding is reasonably supported by the record and should not be overruled.
Lastly, Ms. Harris argues that Mr. Molony’s paycheck deductions for his 401k, medical insurance coverage, dental insurance coverage, and vision insurance coverage should be added back into his net monthly income since those deductions are elective. Ms. Harris fails to acknowledge that Mr. Molony’s paycheck deduction for medical insurance coverage for herself and the parties’ minor child provides a benefit to her and the child of the sort that this Court has previously found to be a form of indirect support. See Katner v. Katner, 09-0974, p. 17-18 (La.App. 4 Cir. 12/23/09), 28 So.3d 566, 578 (crediting payor spouse with “indirect payments ... which include hospitalization insurance premiums, medical deductibles, and auto insurance premiums” as voluntary interim spousal support payments which offset the obligation to pay interim spousal support (citing La. R.S. 9:321(D))). As to Mr. Molony’s 401k deduction, this Court found that a trial | wcourt should not require the payor spouse to cease contributing to his or her retirement savings plan in order to pay interim spousal support. See Frederick v. Frederick, 379 So.2d 808, 811 (La.App. 4 Cir.1980).

Calculation of Mr. Molony’s Monthly Expenses

Ms. Harris contends that the trial court should have considered Mr. Molony’s alleged expense sharing with his sister. Mr. Molony testified that he was not currently paying rent to his sister, although the monthly rent was an accruing obligation, and that the rent payment was inclusive of electricity, water, gas, and cable. Because of his testimony that he was not current on his rent obligation, the trial court added the amount of Mr. Molony’s monthly rent obligation, $400.00, back into his net monthly income.
Ms. Harris claims that the trial court should have also disallowed certain other monthly expenses claimed by Mr. Molony because he is living with his sister rent-free.[13] Those expenses, totaling $370.92, are not included in Mr. Molony’s rent obligation. Ms. Harris cites Derouen, 04-1137, p. 5-6, 893 So.2d at 985, (finding that the payor spouse’s “entire financial condition,” including “any resource from which the wants of life may be supplied,” when ruling on a request for interim spousal support) in support her argument. Mr. Molony counters that his living arrangement with his sister does not amount to a resource of the sort referred to in Der-ouen, because he is obligated to pay her for the benefits he receives from the arrangement, even though he is not current on his payments.[14] Moreover, Mr. Harris *763 does not cite any authority for the proposition that expenses not included in l14Mr. Molony’s rent should be disallowed when determining his net monthly expenses.
Ms. Harris also states that the trial court was ambiguous regarding its calculation of Mr. Molony’s net income, specifically whether and how the trial court included the tax credit Mr. Molony claimed for the parties’ minor child. The tax credit Ms. Harris refers to was from the 2008 tax year, and Ms. Harris fails to demonstrate how a tax credit from 2008, would effect Mr. Molony’s net income in 2009.
Overall, Ms. Harris asserts that the trial court erred in calculating Mr. Molony’s monthly income. While Mr. Molony is a salaried, W-2 employee, his receipt of two one-time bonuses was factored into the trial court’s determination of his gross monthly income. The trial court found that Mr. Molony’s monthly expenses were greater than his monthly income. The trial court then added Mr. Molony’s rent back into his income because Mr. Molony testified that he was not paying rent even though it was an accruing obligation. Thus, the trial court found that Mr. Molo-ny had a small monthly budgetary surplus. In its reasons for judgment, the trial court’s final determination as to Mr. Molo-ny’s ability to pay was that “Mr. Molony has the ability to pay, but not by much.”
However, the trial court further noted that Ms. Harris was not working full-time due to her attendance at AA meetings and individual therapy sessions, and that “Mr. Molony should not be penalized at this time for Ms. Harris’ inability to work full time due to her alcoholism.” The earning capacity of the claimant spouse may properly be considered by the trial court in determining whether interim spousal support should be awarded to the claimant. See Goldberg, 96-2145, 698 So.2d at 66. “Once a spouse establishes that she has insufficient income for maintenance, the trial court may award a sum for that spouse’s support proportioned to the needs of the claimant spouse and the means of the other spouse.” Dagley, 96-1796, 695 So.2d at 523. “An abuse of discretion will not be found if the record supports the trial court’s conclusions about the means of the payor spouse and his or her ability to pay.” Lambert, 06-2399, p. 10-11, 960 So.2d at 928. Thus, it was within the trial court’s discretion to deny Ms. Harris an award of interim spousal support based on the evidence presented of Mr. Molony’s ability to pay.

STANDARD OF LIVING OF THE PARTIES

“Interim spousal support is specifically designed to maintain the status quo during litigation ...” Koeniger, 08-1054, p. 5, 10 So.3d at 274. The trial court, in the reasons for judgment, stated that Ms. Harris and Mr. Molony went on vacations about once per year during the marriage, and that they would go out to eat once a month or once every other month before their separation. The trial court noted that Ms. Harris vacationed twice since the separation. Because the trial court gave due consideration to Ms. Harris’ standard of living both before and after the separation, it was not an abuse of discretion for the trial court to deny Ms. Harris interim spousal support.
The record reasonably supports the findings of the trial court. Considering the minor mathematical errors made by the trial court, its denial of interim spousal support to Ms. Harris was proper based on the evidence and testimony presented because those mathematical errors did not amount to prejudicial error. Given the applicable standard of review and the deference that must be given to factual determinations made by the trial court where *764 those findings are reasonably h (¡supported by the record, we do not find that the trial court abused its discretion.

DECREE

For the above mentioned reasons, we find that the trial court did not err and affirm the denial of interim spousal support.
AFFIRMED.

. The other ancillary matters are not before this Court on appeal and have been omitted from the factual and procedural history.

. Following the order granting the appeal, the trial court awarded child support to Ms. Harris.

. Art. 113 was enacted in 1997, at which time the term “alimony pendente lite” was replaced with "interim spousal support,” thus, appellate court decisions prior to 1997 refer to "alimony pendente lite” as opposed to "interim spousal support.”

. Mr. Molony questioned the legitimacy of certain business expenses claimed by Ms. Harris, but Ms. Harris maintained the accuracy of all of her claimed business expenses.

. Although Ms. Harris does not raise the issue of the monetary assistance she receives from her mother, it is worth noting for purposes of appellate review that this evidence had been presented to the trial court when it made its determination of Ms. Harris’ need for interim spousal support.

. In the judgment awarding child support, the trial court figured in a monthly business expense in the amount of $300 for Ms. Harris' licensing and credentialing. This figure was reflected on Ms. Harris’ Income and Expense Affidavit, but at trial the court indicated that it would not accept this figure because it was artificially inflated by a one-time course Ms. Harris took in 2009, which was not actually a recurring monthly expense. The court indicated that it would, instead, pro-rate Ms. Harris’ annual licensing and credentialing cost from 2008, to determine her true recurring *759 monthly expense. The trial court failed to do so in the judgment awarding child support.
In the reasons for judgment denying interim spousal support, the trial court incorrectly pro-rated Ms. Harris’ annual educational expenses and licensing and credentialing expenses when ascribing monthly business deductions to determine Ms. Harris’ monthly adjusted gross income. Ms. Harris’ annual educational expenses as reflected on her business tax return for 2008, were $475.00, which equates to a monthly expense of $39.58, whereas the trial court erroneously calculated this expense as $49.91 per month. Likewise, Ms. Harris’ annual licensing and credentialing expenses as reflected on her business tax return for 2008, were $491.00, which equates to $40.92 per month; whereas the trial court erroneously calculated this expense as $39.58 per month.

. La. R.S. 9:315(C)(3)(d)(i) appears under Part I-A. of La. R.S. Title 9, which is titled "Child Support,” and Section 315 itself appears under Subpart A., which is titled "Guidelines For Determination Of Child Support;” whereas the subject of spousal support appears later in La. R.S. Title 9, under Part II., which is titled "Spousal Support.” Specifically, Section 326 addresses the determination of income for spousal support.

. Prestenback concerned the modification of a final spousal support award and the question presented was whether Social Security disability income should be considered income. 08-0457, p. 3, 9 So.3d at 175. The First Circuit noted that the codal articles concerning spousal support did not adequately define the terms "income” or "means,” and so the court looked to the Revised Statutes. Id. at p. 12, 9 So.3d at 180. The Prestenback court determined, based on La. R.S. 9:315(C)(3)(d)(i), that social security disability income should be considered income for the purposes of awarding final spousal support.

. Ms. Harris testified that certain expenses (food, housing, clothing, etc.) reflected on her Income and Expenses Affidavit included expenses for her oldest child. The trial court did not reduce those expenses by Ms. Harris’ oldest child’s share. The trial court also figured in the $166.66 per month Ms. Harris pays for child care for her eldest child when it calculated her total monthly expenses.

. Subsequent to the entry of the judgment denying interim spousal support, tire trial court entered the judgment awarding child support to Ms. Harris for the child born of her marriage to Mr. Molony. Thus, the $65.91 paid by Mr. Molony to Ms. Harris as child support would, under Pellerin, also be credited to Ms. Harris as a means of meeting her monthly expenses, since her expenses also include those of her child by Mr. Molony.

. In addition, Ms. Harris’ calculations would impute an annual salary to Mr. Molony of $111,893.94, which is significantly more than the $94,500.00 annual salary reflected on his April 15, 2009 paystub.

. The actual calculation comes to $8,343.31, a difference of $102.86.

. The expenses Ms. Harris argues Mr. Molo-ny should not be allowed to claim are: telephone/internet ($91.65), cellular phone ($95.27), laundry/cleaning ($30.00), household supplies ($50.00), and cable ($104.00). Note, however, that the cable expense is for the former marital home where Ms. Harris resides, which Mr. Molony pays for the benefit of Ms. Harris and the parties’ minor child. See Katner, 09-0974, p. 17-18, 28 So.3d at 578 (crediting payor spouse with "indirect payments ... which include hospitalization insurance premiums, medical deductibles, and auto insurance premiums" as voluntary interim spousal support payments (citing La. R.S. 9:321(D))).

.Expense sharing was not at issue in Der-ouen; rather, the issue was whether the payor spouse's entire financial condition included that spouse’s earning capacity. See Derouen, 04-1137, p. 7, 893 So.2d at 986.