JAMES MIDDLETON HUGER     *     NO. 2022-CA-0410

VERSUS     *

STEPHANIE GOLIWAS     *     COURT OF APPEAL
HUGER

    *     FOURTH CIRCUIT

    *     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-07554, DIVISION "K"
Honorable Bernadette D'Souza, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge
Tiffany Gautier Chase)

Mark J. Mansfield
Amy C. Cowley
Chandler D. McCoy
TRANCHINA & MANSFIELD, LLC
321 E. Kirkland Street
Covington, LA 70433

    COUNSEL FOR PLAINTIFF/APPELLANT


Marc D. Winsberg
Jonathan D. Gamble
WINSBERG & HEIDINGSFELDER & GAMBLE, LLC
650 Poydras Street, Suite 2050
New Orleans, LA 70130

    COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**DECEMBER 14, 2022**

This is a domestic case. Plaintiff/appellant, James Middleton Huger ("Husband"), appeals the January 5, 2022 judgment of the district court, which adopted the Special Master's recommendation classifying certain payments as an extension of interim spousal support. Pursuant to a June 2, 2020 consent judgment, Husband made a $300,000 lump sum payment to defendant/appellee, Stephanie Goliwas Huger ("Wife"), along with Husband's payment of particular expenses. The parties reserved to the Special Master the issue of whether these payments would be classified either as an extension of interim spousal support or as an advance on Wife's share of the community. The Special Master recommended that said payments were an extension of interim spousal support, and in the judgment on appeal, the district court adopted that recommendation. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The following facts and procedural timeline are pertinent to our determination. Husband and Wife were married on April 16, 1994. Four children

were born of the marriage, who have all reached the age of majority. The parties have a community property regime, and no premarital agreement was established before the marriage. On July 30, 2018, Husband filed a Petition for Divorce Pursuant to Louisiana Civil Code Article 102. On February 12, 2019, the parties entered into a consent judgment to appoint a Special Master. The parties agreed, in pertinent part, that Steven J. Lane (the "Special Master") be appointed as Special Master to make findings and recommendations regarding the determination, valuation, and allocation of the parties' community assets, liabilities, and reimbursement claims.[1]

On July 26, 2019, the parties entered into another consent judgment in which Husband agreed to pay the following relevant amounts:

- $24,000 per month in interim spousal support; and

- Certain "direct expenses" including:

    o 100% of Wife's health insurance premiums and uncovered medical expenses;

    o 80% of the mortgage, property taxes, flood insurance, homeowners insurance, utilities, cable, internet, housekeeper, handyman, lawn and garden maintenance, pest control, pool maintenance, home security and maintenance/repairs for the former family home; and

---

[1] Louisiana Revised Statute 13:4165 governs the appointment, duties, and powers of special masters in particular civil cases. "Pursuant to the inherent judicial power of the court and upon its own motion and with the consent of all parties litigant, the court may enter an order appointing a special master in any civil action wherein complicated legal or factual issues are presented or wherein exceptional circumstances of the case warrant such appointment…" La. R.S. 13:4165(A). "The court may order the master to prepare a report upon the matters submitted to him and, if in the course of his duties he is required to make findings of facts or conclusions of law, the order may further require that the master include in his report information with respect to such findings or conclusions." La. R.S. 13:4165(C)(1). "Within ten days after being served with notice of the filing of the report, any party may file a written objection thereto. After a contradictory hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions. If no timely objection is filed, the court shall adopt the report as submitted, unless clearly erroneous." La. R.S. 13:4165(C)(3).

o 80% of the umbrella and art/jewelry insurance policy premiums and Wife's automobile insurance premiums.

On September 6, 2019, a judgment of divorce was granted. Pursuant to La. C.C. art. 113, interim spousal support was scheduled to end on March 4, 2020, which was 180 days from the September 6, 2019 judgment of divorce. Thus, on January 16, 2020, Wife filed a motion to extend interim spousal support or, in the alternative, for an advance of community funds.

On June 2, 2020, the parties entered into an additional consent judgment. For the period of March 4, 2020 to May 31, 2020, Husband agreed to pay Wife $24,000 per month along the direct expenses memorialized in the July 26, 2019 consent judgment, all of which would be classified as an advance on Wife's share of community property.

In addition, in the June 2, 2020 consent judgment, Husband agreed to certain payments, which are the subject of this appeal. In particular, Husband agreed to pay Wife a lump sum of $300,000 on June 1, 2020, as well as the direct expenses listed in the July 26, 2019 consent judgment for the limited period of June 1, 2020 through August 18, 2020. The parties stipulated that these payments would be classified as either an extension of interim spousal support or an advance on Wife's share of the community property, and that classification would be deferred to the Special Master at a later date, with both parties reserving all rights regarding the classification.

On August 10, 2020, Wife filed a second motion to extend interim spousal support or, in the alternative, for an advance of community funds. Meanwhile, a

bifurcated traversal trial took place on August 19, 20, and 21, 2020, and September 21, 2020, during which the Special Master received evidence and heard oral argument and testimony regarding the classification of certain assets as community property or separate property. On September 21, 2020, the Special Master also held a hearing on the second motion for extended interim support and/or advance. On October 2, 2020, the Special Master entered a recommendation to deny Wife any extension of interim support after September 21, 2020; instead, he recommended an advance from the community in the amount of $775,000, net of taxes. Neither party objected to this recommendation.

The Special Master held no further hearing regarding classification of the $300,000 lump sum payment and direct expenses. On January 12, 2021, following supplemental briefing by the parties, the Special Master issued a recommendation that the $300,000 lump sum and payments of direct expenses for the period of June 1 to September 21, 2020 should be classified as an extension of interim spousal support. On March 10, 2021, Husband filed an objection to the Special Master's January 12, 2021 recommendation, and on August 17, 2021, the district court held a hearing on Husband's objection. On January 5, 2022, the district court rendered judgment overruling Husband's objection and adopting the Special Master's recommendation in its entirety. This appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Husband asserts three assignments of error:

1. The trial court erred in classifying the $300,000 lump sum payment and direct expenses paid by [Husband] as an extension of interim spousal support when the Special Master previously ruled that [Wife] was not entitled to an extension of spousal support and did not meet her burden.

2. The trial court erred in determining a $300,000 lump sum payment and direct expenses paid from June 1, 2020 to September 21, 2020 were to be considered an extension of interim spousal support, whereby such payments exceed the $10,000/month finding made by the Special Master to be [Wife's] actual "need" in calculating interim spousal support.

3. The trial court erred in determining a $300,000 lump sum payment and direct expenses paid from June 1, 2020 to September 21, 2020 were to be considered an extension of spousal support and wholly disregarding the law of the case established by a prior final judgment.

## DISCUSSION

As Husband points out, the significance of whether the lump sum payment and direct expenses are classified as interim spousal support or an advance on Wife's share of the community is whether Husband will be entitled to reimbursement for one half of these amounts. Husband argues that if the lump sum payment and direct expenses are an advance from community property, then he will be entitled to reimbursement for one-half at partition.[2] However, if they are

---

[2] "If community property has been used during the existence of the community property regime or former community property has been used thereafter to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used." La. C.C. art. 2364.

5

extended interim spousal support, Husband would not be entitled to such reimbursement.[3]

**Standard for Extension of Interim Spousal Support**

The classification of the disputed payments as interim spousal support depends on whether Wife has shown good cause for an extension of interim spousal support beyond 180 days. The Civil Code provides for an award of interim spousal support and extension of the award for good cause under La. C.C. art. 113(A), which states:

> Upon motion of a party, the court may award a party interim spousal support based on the needs of that party, the ability of the other party to pay, any interim or final child support obligation, and the standard of living of the parties during the marriage. An award of interim spousal support shall terminate one hundred eighty days from the rendition of a judgment of divorce, except that the award may extend beyond one hundred eighty days but only for good cause shown.

This Court recently discussed the relevant standard for an extension of interim spousal support as follows:

> "The purpose behind interim spousal support is to ensure that the parties maintain the status quo enjoyed during the marriage while the divorce is pending." *Hight v. Hight*, 2017-0566, p. 5 (La. App. 4 Cir. 12/13/17), 234 So.3d 1143, 1147 (citing *Evans v. Evans*, 49,160, p.3 (La. App. 2 Cir. 6/25/14), 145 So.3d 1093, 1094-95). "The spouse seeking interim spousal support bears the burden of proving his or her entitlement to such support." *Id.* (citing *Loftice v. Loftice*, 2007-1741, p. 5 (La. App. 1 Cir. 3/26/08), 985 So.2d 204, 207). "In order to establish that need, it must be shown that the requesting spouse lacks sufficient income to preserve the standard of living they previously enjoyed while married." *Id.* (citing *Brown v.*

---

[3] "An alimentary obligation imposed by law on a spouse is deemed to be a community obligation." La. C.C. art. 2362.

*Brown*, 44,989, p. 5 (La. App. 2 Cir. 1/27/10), 31 So.3d 532, 536). "Once that spouse has demonstrated their need, then the court will look to the ability of the other spouse to pay interim support." *Id.*, 2017-0566, pp. 5-6, 234 So.3d at 1147.

A trial court's determinations on interim spousal support [are] reviewed under the abuse of discretion standard. *Molony v. Harris*, 2009-1529, p. 2 (La. App. 4 Cir. 10/14/10), 51 So.3d 752, 756. Accordingly, "[i]f the trial court record supports the trial court's reasoning and conclusions regarding the means of the payor spouse and his or her ability to pay, no abuse of discretion will be found." *Hight*, 2017-0566, p. 5, 234 So.3d at 1147 (citing *Molony*, 2009-1529, p. 2, 51 So.3d at 756). The trial court's factual findings will not be set aside unless there is manifest error. *Id.*

As La. C.C. art. 113 makes clear, an award of interim spousal support expires by operation of law 180 days after the judgment of divorce is rendered. The award can be extended "for good cause shown," however.

"Whether 'good cause' exists for the extension of interim support must be determined on a case-by-case basis." *Hogan v. Hogan*, 49,979, p. 23 (La. App. 2 Cir. 9/30/15), 178 So.3d 1013, 1026 (citing *Guillory v. Guillory*, 2008-1375 (La. App. 3d Cir. 4/1/09), 7 So.3d 144). "It must constitute, if not a compelling reason, certainly a reason of such significance and gravity that 'it would be inequitable to deny an extension of such support.' " *Id.*, 49,979, pp. 23-24, 178 So.3d at 1026 (quoting *Roan v. Roan*, 38,383, p. 21 (La. App. 2 Cir. 4/14/04), 870 So.2d 626, 639). *Roan* clarified that "good cause" pursuant to La. C.C. art. 113 "requires an affirmative showing by the party seeking an extension of interim support that the extension is really and genuinely needed, and the purpose for which it is sought is legitimate, not calculated to cause hardship or to obtain as much spousal support as possible for as long as possible." *Roan*, 38,383, p. 22, 870 So.2d at 639.

*Bernstein v. Bernstein*, 19-1106, pp. 14-16 (La. App. 4 Cir. 2/10/21), 313 So.3d 413, 424, *writ denied*, 21-00390 (La. 5/4/21), 315 So.3d 220, and *writ denied*, 21-00380 (La. 5/4/21), 315 So.3d 222.

Husband's appeal sets forth two main arguments. First, the Special Master's earlier October 2, 2020 recommendation imputed to Wife a monthly need for $10,000 in personal living expenses; Husband argues this is the law of the case and that classifying the disputed payments as extended interim spousal support is inconsistent with Wife's need. Second, he argues that no good cause was shown for an extension of spousal support. We disagree on both counts.

**Law of the Case**

We find no support for the proposition that the Special Master's reasoning as to Wife's need, corresponding to a different period than the one in question, constitutes law of the case by which this Court must be bound.

"The 'law of the case' doctrine generally refers to the binding effect of trial court and/or appellate court rulings during later stages of the same case, including the principle that an appellate court ordinarily will not reconsider its own rulings of law in a subsequent appeal in the same case." *Myers v. Nat'l Union Fire Ins. Co. of Louisiana*, 11-0751, p. 6 (La. App. 4 Cir. 4/4/12), 90 So.3d 522, 526. The Louisiana Supreme Court described the policy reasons behind this doctrine, including: "(1) avoiding relitigation of the same issue; (2) promoting consistency of result in the same action; and (3) promoting efficiency and fairness to the parties by affording a single opportunity for the argument and decision of the matter at issue." *Id.*, 11-0751, pp. 6-7, 90 So.3d at 526 (citing *Day v. Campbell–Grosjean Roofing & Sheet Metal Corp.*, 260 La. 325, 256 So.2d 105, 107 (1971)). Even so, "[u]nlike the statutory doctrine of res judicata, the jurisprudential doctrine of law

of the case is a discretionary guide that will not be applied inflexibly." *Daigre v. International Truck and Engine Corp.*, 10-1379, p. 15 (La. App. 4 Cir. 5/5/11), 67 So.3d 504, 513-14. Further, "it will not be applied when the underlying, operative facts upon which the court's prior decision was based have changed." *Id.*, 10-1379, p. 15, 67 So.3d at 514. "[J]urisprudence provides that the law of the case doctrine 'does not apply when the issues are not identical, when there is more than a mere doubt as to the correctness of the earlier decision, or when there is intervening case law.'" *KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc.*, 11-0598, p. 8 (La. App. 4 Cir. 3/14/12), 89 So.3d 1207, 1212 (quotation omitted).

The Special Master's October 2, 2020 recommendation was rendered following trial on Wife's second motion to extend interim spousal support or, in the alternative, for an advance of community funds, which was filed on August 10, 2020. This recommendation explicitly refers to the period after September 21, 2020. Husband contended at that particular time that he did not have the ability to pay interim spousal support going forward in light of his businesses suffering due to the government restrictions arising from the COVID-19 pandemic. Evidence was also presented as to a recent employment offer made to Wife, which Wife rejected. In contrast, the January 12, 2021 recommendation classifying the lump sum and direct expense payments served to resolve the remaining issue on Wife's first motion to extend interim spousal support or, in the alternative, for an advance of community funds, which was filed on January 16, 2020. The single issue reserved to the Special Master therein was classification of payments, which had

9

already made to or on Wife's behalf. The Special Master's January 12, 2021 recommendation refers to a different limited period, June 1, 2020 to September 21, 2020. We cannot say that the issues before the Special Master were identical, and we decline to apply the law of the case doctrine.

**Classification of Payments**

We likewise do not find that the Special Master's classification of the payments as spousal support is inconsistent with his statements as to Wife's need as of October 2, 2020. In both of his October 2, 2020 and January 12, 2021 recommendations, the Special Master issued detailed reasons, which corresponded to specific periods of monthly support.

When interim support terminated by operation of law on March 4, 2020, the parties agreed by consent judgment that Husband's payments over the next three months of $24,000 plus direct expenses were an advance against Wife's share of community property, not interim spousal support.

The disputed lump sum and direct expenses, characterized by the Special Master as extended interim support, were limited to a specific window of time, June 1, 2020 to September 21, 2020. The parties agreed by consent judgment to the quantity of the $300,000 lump sum and direct expenses. Husband already paid these amounts in June 2020, and Husband's ability to pay these amounts as of that time was not disputed. The parties deferred the classification of these payments to the Special Master, but not the quantity of the payments themselves. The Special Master found that good cause existed to provide Wife with financial support and

10

that a more viable basis existed to characterize payments before September 21, 2020 as extended interim support than those payments made after. As to Wife's need for financial support during this time, the Special Master looked to Wife's age, work history, absence from the work force during the marriage, and education, similar to the factors identified in *LaRocca v. LaRocca*, 14-255, p. 11 (La. App. 5 Cir. 10/29/14), 164 So.3d 207, 214. Specifically, Wife was 52 years old at the time, and while she had attained an undergraduate degree in fine arts, she had not worked full time at any point during the 24-year marriage; rather, she sporadically performed substitute teaching work and was primarily a homemaker through the time the parties' youngest children graduated from high school in May 2020. No vocational rehabilitation expert testified on behalf of either party as to Wife's capacity to work or available employment, and neither party introduced any other evidence regarding Wife's ability to obtain full time employment prior to Fall 2020. The Special Master found it compelling that Wife used "essentially all, if not all of the $300,000 payment that she received in June 2020 to pay for her day to day living expenses and legal fees," which the Special Master found "confirms that [Wife] needed extended interim support during that time." The Special Master indicated that both parties spent approximately $200,000 per year on attorney's and expert's fees. As to Husband's ability to pay, the Special Master noted Husband had a greater ability to pay from June to September 2020 than he would have had after September 21, 2020. In particular, Husband "spent a considerable amount of time at the island in Maine and/or on his yacht in Turks and Caicos.

11

Moreover, according to [Wife], responses to discovery revealed that, from March 1, 2020 through August 18, 2020 [Husband] had deposits in his accounts in excess of a million dollars and was netting a monthly income in excess of $100,000 through August 2020."

Importantly, all interim support terminated after September 21, 2020, at which point only an advance from the community was recommended. In the October 2, 2020 recommendation, the Special Master calculated an amount that he suggested would cover Wife's financial need for at least one year, from September 21, 2020 to September 21, 2021.[4] The Special Master's denial of extended interim spousal support as of October 2020 was based in part on evidence that Wife was employable and was offered employment for the school year beginning Fall 2020 paying an annual salary of $20,000 as a ceramics teacher, an offer which Wife rejected. The Special Master recommended that termination of interim support as of this period weighed in favor of classifying the previously paid disputed sums, corresponding to June to September 2020, as extended interim support for that limited period. The Special Master also noted that Husband's business enterprises had suffered pandemic-related financial losses, which were more severe after September 21, 2020 than in the previous period in dispute, such that Husband's ability to pay the support was considerably different in June 2020 than it was on a prospective basis after September 2020.

---

[4] The October 2020 $775,000 advance calculated by the Special Master was intended to pay for: (1) $215,000 in Wife's outstanding attorney's and expert's fees; (2) $200,000 in Wife's attorney's and expert's fees for the following year; (3) $240,000 for 1 year of expenses at $20,000 per month to maintain the former family home; and (4) $120,000 for one year of Wife's personal expenses at $10,000 per month.

Considering the Special Master's detailed reasoning and looking to the totality of the circumstances involved, we cannot say that the district court abused its discretion in finding good cause to extend interim support based on its finding that the amount awarded was reasonable based upon Wife's need for support, the prior lifestyle enjoyed by the parties during the marriage, and Husband's ability to pay said support.

Finding no compelling reason to disturb the classification of payments as a limited extension of interim spousal support, we affirm the district court's adoption of the Special Master's January 12, 2021 recommendation.

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, we affirm the judgment of the district court.

**AFFIRMED**