DREW, J.
Lin this child support case, Matthew Wade Carter (“Carter”), pro se, appeals a judgment of the trial court modifying a child support obligation.
Finding no abuse of discretion, we affirm.
FACTS
Carter and his former spouse, Stefanie Carter Kilcullen (“Kilcullen”),. are the parents of three children.[1] The parties divorced in 2000. Custody and child support have been frequently adjusted by the court. Kilcullen requested modifications of a May 1, 2012, judgment which provided:
• Kilcullen remained as domiciliary parent of the minor in Lubbock, Texas;
• Carter became domiciliary parent of Aaron in Bossier City, Louisiana;
• Each parent was allowed to claim one dependent yearly for taxes;
• Carter’s support obligation was set at $330.00[2] per month;
• Carter was responsible for health and dental insurance premiums for the minor children; and
• Each parent was responsible for half of any medical or dental expenses not covered by insurance.
On May 10, 2013, Kilcullen[3] filed a rule to increase child support and to request other relief, alleging these material changes in circumstances:
• Shared or split custody arrangement no longer existed as Aaron had reached the age of majority, graduated *83 from high school, and no longer lived in his father’s residence;
• Increased expenses were necessary for the minor, now in his teens; |2and
• Carter’s income had greatly increased, due to change in employment.
After a hearing at which each party testified and introduced documentary evidence, the trial court rendered judgment in open court on February 20, 2014, and signed a judgment on March 20, 2014, which:
• Awarded Kilcullen $1,334.81 per month as child support for the minor;
• Awarded Kilcullen $7,033.67 in net ar-rearage child support;
• Reduced Carter’s support obligation for the months of June and July of each year by $444.94 per month conditioned upon the minor being in Carter’s actual physical custody during those months;
• Ordered Carter to continue to provide health and dental insurance coverage for the minor with each parent responsible for half of any health related expenses not covered by insurance; and
• Directed the parents to alternate years in claiming the federal and state income tax dependency exemption (Kilcullen allowed 2013 tax year exemption and succeeding odd numbered years; Carter allowed 2014 exemption and succeeding even numbered years).
The trial court found that a material change in circumstance had taken place since the rendition of the 2012 plan. In particular, the parties no longer shared a split custody arrangement as to Aaron, who had reached the age of majority and graduated from high school. In calculating the parties’ support obligations, the trial court found Carter’s income to be $12,522.52 per month and imputed $2,500.00 per month to Kilcullen. Carter appealed.
DISCUSSION

Standard of ReviewIChange in Circumstances

The determination or modification of child support is governed by the guidelines contained in La. R.S. 9:315 et seq. The trial court has great discretion in establishing and modifying child support awards and its | ¡Judgment will not be disturbed on appeal absent a clear abuse of discretion.[4]

Income Tax Dependency

Carter asserts the trial court erred in alternating annually the dependency deduction between the parties. As Kilcullen is unemployed, Carter submits that he is entitled to the deduction each year per La. R.S. 9:315.18(B)(1).[5] Kilcullen responds *84 that $2,500.00 in monthly income was in fact imputed to her and Carter failed to introduce any evidence that the right to claim the deduction would substantially benefit him without significantly harming her as the nondomiciliary party. Additionally, the issue arose only during the trial court’s oral in-court ruling.[6]
Kilcullen submits that, as in Bickham v. Bickham, 46,264 (La.App.2d Cir.3/2/11), 58 So.3d 950, the trial court crafted a solution of rotating the tax credit in an attempt to be equitable to both parties where no evidence was presented on the issue of substantial benefit to the nondomiciliary party 14versus significant harm to the domiciliary party.
Both elements of La. R.S. 9:315.18(B)(1) must be satisfied in order for the nondomiciliary party to be entitled to the tax dependency deduction. Bick-ham, supra. Where there is no evidence to prove that the income tax deduction would significantly benefit the nondomicili-ary parent without significantly harming the domiciliary parent, the nondomiciliary parent has not proven entitlement. Skipper v. Skipper, 46,935 (La.App.2d Cir.2/1/12), 86 So.3d 707; Semmes v. Semmes, 45,006 (La.App.2d Cir.12/16/09), 27 So.3d 1024. Under these circumstances, with a record devoid of evidence on the issue, we find no abuse of the trial court’s discretion in allowing the parties to alternate years in which to claim the tax deduction.

VA Disability Income

Carter argues the trial court erred in its calculation of child support by imputing to him additional, nonexistent income of $622.00 in monthly VA disability payments. He contends that his income tax returns, bank statements, and VA award letter show that the sum was already included in his total military retirement income and is subject to a “tax break.” In response to questioning from the trial court, Carter testified that his total military retirement pay, which he asserted totaled approximately $3,000 a month, included the $622 “tax credit” VA award.
Kilcullen submits the trial court did not err in imputing to Carter an additional $622 in monthly income. Carter’s VA disability benefits are separate nontaxable payments not reported as taxable income on his various IRS filings. She contends that when a military retiree is entitled to a VA disability rating due to injuries sustained on active duty, a percentage of his | ¿retirement pay, corresponding to that percentage of disability, is deducted and converted to nontaxable VA disability benefits. She asserts that community property partition case law can be of assistance in understanding that VA disability pay is nontaxable.[7]
*85 In ruling, the trial court specifically referred to Carter’s VA. Service Connected compensation award letter, and states:
Mr. Carter, here’s what I do know, that you receive a payment which benefits you in some shape, form, or fashion, whether or not it’s through a tax exemption or whether or not it’s a direct payment. ... But what I do have, Mr. Carter, is a sheet that shows that that is a payment made and that it began in April — in fact, April 1, if I’m not mistaken, of 2012. So I have added that $622 in.
We find no manifest error in the trial court’s factual finding that Carter receives $622.00 in VA disability as monthly income and imputing | fithat income to him. Exhibit P6, a Military Retirement Pay Account Statement issued by DFAS,[8] lists Carter’s monthly gross pay as “3,004.00” and monthly taxable income as “3003.00.” The corresponding 1099-R reflects equal DFAS gross distributions and taxable income. The record fails to support Carter’s claim that the VA disability amount is included within the claimed total monthly retirement income of approximately $3,000 as a separate and nontaxable portion.

Seasonal Work

Carter asserts the trial court erred in imputing to him additional income of $250.00 per month based on his seasonal work as an umpire for Bossier Parks and Recreation. He submits that La. R.S. 9:315.12,[9] as well as his sworn testimony that he no longer works the seasonal job given the demands of his primary employment, should operate to prevent the trial court’s inclusion of income from that source. Kilcullen- testified that Carter has made the same claim, that his primary employment prevents him from working as an umpire, at previous court appearances but has consistently maintained that employment every year since 2009. The supplemental income was also reported on Carter’s 2012 and 2013 tax returns. Kilcullen notes that the statute is discretionary and further that the record is devoid of any proof that Carter has used the additional income to provide for *86 his 17subsequent family.[10] The trial court’s factual determination that Carter continues to be employed seasonally as an umpire is not manifestly erroneous. In addition, the court was well within its discretion in refusing to modify the existing child support order, because of Carter’s familial obligations in support of his subsequent family.
*85 The court may consider the interests of a subsequent family as a defense in an action to modify an existing child support order when the obligor has taken a second job or works overtime to provide for a subsequent family. However, the obligor bears the burden of proof in establishing that the additional income is used to provide for the subsequent family.

*86
Rental Income

Carter argues the trial court erred in attributing to him $1,650.00 in rental income from property located at 103 Couples Drive, Bossier City. He submits that he and his present spouse purchased the property together to use as their primary residence and that they owned it in community. After Aaron moved in, the family needed more space. In order to afford their new home, the couple agreed to sell the Couples Drive property subject to a lease purchase agreement. Carter argues he clearly showed that in this community property state, rental income is divided among both parties equally, there is no guarantee of rental income, and the expenses to upkeep a rental property offset the income. He contends the property is not generating income given its expenses, which include homeowner’s dues, property taxes, repairs, and maintenance.
Kilcullen contends the property is Carter’s separate property, relying on a cash sale deed introduced into evidence that included an acknowledgment on the instrument executed by his present wife that the property was being purchased with Carter’s “separate funds for his separate administration.” Kilcullen introduced the lease wherein the tenant agreed to [spay $1950 per month as “Rent.” She proved that the property is not burdened by a mortgage. Carter introduced no evidence or receipts showing expenditures on the property for taxes, repair, or maintenance.
The trial court found that the cash sale deed showed the property to be his separate property and that it was not burdened by a mortgage. It found no purchase agreement. It found a lease with option to purchase.
Though Carter introduced no proof of expenses, the court credited him with $300.00 per month in recognition and estimation of property tax expenses of which the court could take judicial notice. The trial court’s findings are adequately supported by the record and are not clearly wrong.

Downward Deviation

Carter assigns as error the trial court’s failure to take into consideration his financial obligation to his support his immediate family and to maintain a household year round to accommodate the minor. He contends that in all previous appearances before this trial court, a deviation of approximately 15% downward had been allowed.
We agree with Kilcullen that Carter failed to establish:
• an independent showing that the guidelines are unfair to him; and
• a case that a downward deviation is in the best interest of the child.
We agree with her that a previous downward deviation does not necessarily entitle one to a continued downward deviation.
Louisiana R.S. 9:315.1 creates a re-buttable presumption that the amount of child support calculated under the guidelines is the proper amount of a child sup *87 port award. La. R.S. 9:315.1(B) allows the trial court to deviate from the guidelines if their application would not be in the best | ^interest of the child or would be inequitable to the parties. Guillot v. Munn, 99-2132 (La.3/24/00), 756 So.2d 290. In determining whether to deviate from the guidelines, the court may consider the legal obligation of a party to support dependents that are not the subject of the action before the court and who are in that party’s household. As with all decisions to deviate from the guidelines, the trial court must, in accordance with Subsection (B), give oral or written reasons for the deviation on the record. Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762; State ex rel. Metcalf v. Samuels, 34,402 (La.App.2d Cir.12/20/00), 775 So.2d 1162. As the party seeking a downward deviation, Carter had the burden of proving the inequity of the child support guidelines, considering his support of his new family. He introduced no evidence to justify a deviation.
DECREE
At the cost of Matthew Carter, the judgment is AFFIRMED.

. Ashley, Aaron, and one remaining "minor.”

. When the trial court signed the judgment, it handwrote the words highlighted here: "Judgment rendered, signed, and filed on this 1st day of May 2012, without prejudice to either party, as this is not a considered decree, in Benton, Bossier Parish, Louisiana."

. Kilcullen originally filed this latest litigation without counsel. Her lawyer entered the case on July 29, 2013.

. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762; Curtis v. Curtis, 34,317 (La.App.2d Cir. 11/1/00), 773 So.2d 185.

. LSA-R.S. 9:315.18 provides, in pertinent part:
A. The amounts set forth in the schedule in R.S. 9:315.19 presumes that the custodial or domiciliary party has the right to claim the federal and state tax dependency deductions and any earned income credit. However, the claiming of dependents for federal and state income tax-purposes shall be as provided in Subsection B of this Section.
B. (1) The non-domiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation shall be entitled to claim the federal and state tax dependency deductions if, after a contradictory motion, the judge finds both of the following:
(a) No arrearages are owed by the obligor.
(b) The right to claim the dependency deductions or, in the case of multiple children, a part thereof, would substantially *84 benefit the non-domiciliary party without significantly harming the domiciliary party.

. The' trial court responded to Carter that the spirt of the previous child support plan was that each party claimed one tax deduction when there were two minor children still subject to the plan and entitled to support. The trial court apparently felt that this was an equitable arrangement, considering only one child was still a minor.

. Rearden v. Rearden, 568 So.2d 1111 (La.App. 2d Cir.1990):
Mr. Rearden served 20 years in the United States Air Force. He retired July 1, 1981 and applied for Veterans Administration Disability payments in August 1982. The government apportioned 10% of his military retirement pension as disability payments and required him to waive an equivalent amount of his military retirement benefits. Therefore, he received the same sum as before, only with part of his retirement benefits designated as nontaxable Disability pay. Mr. Rearden was receiving $71.00 per month for Disability pay as of the time of the trial for judicial partition. *85 He claims the Disability payments received are not subject to Louisiana community property law. (Emphasis added by Kilcul-len).
Harmon v. Harmon, 617 So.2d 1373 (La.App. 3d Cir. 1993):
Because of his disability Phil was eligible for tax-free, veteran’s disability benefits. In order to receive those benefits, however, federal law required Phil to waive corresponding amounts of his military retirement pay. See 38 U.S.C.A. § 5305 (West 1988 ed.). Military retirement pay that has been waived to receive veteran’s disability benefits is not community property. 10 U.S.C.A. § 1408(a)(4)(B) (West Supp.1992); Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (holding that 10 U.S.C.A. § 1408(a)(4)(B), the Former Spouses’ Protection Act, does not grant states the power to treat military retirement pay that has been waived to receive veteran’s disability benefits as property divisible upon divorce); Wright v. Wright, 594 So.2d 1139, 1142 (La.App. 3d Cir.1992). Hence, Sandra is entitled to her community share in that portion of Phil's retirement pay that was earned during the existence of the community less those amounts that Phil waived to receive disability benefits. (Emphasis added by Kilcullen).

. Defense Finance and Accounting Service.

. La. R.S. 9:315.12, entitled "Second jobs and overtime” provides:

. Carter remarried and has two children with his current wife. At this time, the children are aged nine and seven.