NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 19-917

CAMILLE WILSON CHARRIER

VERSUS

JOHN MICHAEL CHARRIER

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 29,151
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy H. Ezell, Judges.

AMENDED AND AFFIRMED AS AMENDED.

Wilson & Wilson
Donald R. Wilson
Christie C. Wood
Post Office Box 1346
Jena, LA 71342
(318) 992-2104
COUNSEL FOR PLAINTIFF/APPELLANT:
    Camille Wilson Charrier

**E. Grey Burnes Talley**
**711 Washington Street**
**Alexandria, LA 71301**
**(318) 442-5231**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**John Michael Charrier**

**Pickett, Judge.**

Husband appeals the trial court's judgment ordering him to pay $2,000 per month in child support and $12,500 per month in interim spousal support. For the following reasons, we amend both awards and the retroactivity of the awards and affirm the awards as amended.

## FACTS

Camille and John Michael Charrier were married in January 2004. In March 2005, Eli, their only child, was born. Camille filed a petition for divorce on March 18, 2018, in which she requested awards for child support and interim spousal support. She alleged that John Michael moved out of the family home in early March 2018. Camille, Eli, and Camille's daughter continued living in the family home. John Michael began living with a girlfriend and contributed to the payment of her expenses in exchange for not paying rent.

In January 2019, John Michael closed the community bank account that he and Camille had continued to use after she filed her petition for divorce. He closed the account without notifying Camille which led to insufficient funds being available for Camille to pay their recurring community expenses, and she had to borrow money to pay community and personal expenses. John Michael began providing money to Camille for some of the expenses and also began paying some of the expenses himself. He also made purchases of a new truck, a new boat, and a new car.

On June 18 and 20, 2019, the trial court conducted a hearing on Camille's claims. The trial court allowed the parties time to file post-trial briefs and left the record open for additional evidence to be filed into the record. However, no post-trial briefs or additional evidence was filed in the record. After receiving the

parties' post-trial briefs, the trial court issued a judgment awarding Camille $2,000 in child support and $12,500 in interim spousal support. The trial court ordered that the awards were retroactive to the date of judicial demand and that the parties were to conduct an accounting between themselves to "account for any amounts made and/or received during the pendency of this rule[.]" John Michael appealed.

## ASSIGNMENTS OF ERRORS

John Michael assigns the following errors with the trial court's awards:

1. It was error for the Trial Court to award child support in the amount of $2,000.00 per month and to not order Camille to maintain the current policy of healthcare insurance covering Eli (through her employment, if available).

2. It was error for the Trial Court to deviate from the child support guidelines without giving "specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines" and "ma[king] the reasons a part of the [r]ecord." R.S. 9:315.1 B(1).

3. It was error for the Trial Court to make its award of child support retroactive to the date of judicial demand.

4. It was error for the Trial Court to not grant John the right to claim the federal and state income tax dependency deduction on Eli in all years and to not require Camille to timely execute all forms required by the IRS authorizing John to claim such deductions.

5. It was error for the Trial Court to award interim spousal support in the amount of $12,500.00 per month.

6. It was error for the Trial Court to make its award of interim spousal retroactive to the date of judicial demand.

## DISCUSSION

*Support Awards*

The trial court signed a judgment awarding child support and alimony to Camille without stating reasons or making any findings of fact. Camille contends

2

that without findings of fact, this court cannot find that the trial court abused its great discretion in making its awards. She argues that because the parties' child support worksheets[1] submitted to the trial court are not in the record, we cannot find error with the trial court's child support award. John Michael urges that we remand the matter to allow for additional testimony and fairer awards.

Trial courts have great discretion in decisions concerning child support awards. *Gary v. LeBlanc*, 16-1054 (La.App. 3 Cir. 6/7/17), 222 So.3d 784. Appellate courts "review child support determinations using the manifest error standard of review, and we will not disturb the trial court's support order unless it committed manifest error or an abuse of discretion in its determination." *Bergeron v. Bergeron*, 11-130, p. 4 (La.App. 3 Cir. 10/5/11), 75 So.3d 537, 540, *writ denied*, 11-2466 (La. 1/20/12), 78 So.3d 144. The same is true of interim spousal support awards. *Molony v. Harris*, 09-1529 (La.App. 4 Cir. 10/14/10), 51 So.3d 752.

Financial documentation is necessary to determine child support obligations. La.R.S. 9:315; *Collins v. Collins*, 12-726 (La.App. 3 Cir. 12/5/12), 104 So.3d 771. Here, although the parties' worksheets are not in the record, "there is sufficient other evidence in the record for the trial court to have determined the parties' gross monthly earnings and to render a child support award in accordance with the guidelines." *Id*. at 774. Financial information is also necessary to determine awards for interim spousal support. La.R.S. 9:326. The parties introduced financial records and testified regarding their finances to support their claims at trial. Accordingly, remand is not necessary.

---

[1] Louisiana Revised Statutes 9:315.2(A) provides, in pertinent part: "Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings."

*Child Support*

We begin with John Michael's complaint that the trial court erred in awarding Camille $2,000 per month in child support. John Michael's stipulated monthly gross income is $18,776. He pays child support in the amount of $493[2] per month for his daughter which must be deducted from his gross income. La.R.S. 9:315(C)(1)(a). John Michael argues the trial court erred in failing to reduce his gross income by the reasonable and ordinary expenses associated with his self employment, such as his truck note and other work-related expenses as provided by La.R.S. 9:315(C)(3)(c).

In March 2018, John Michael owned a Dodge truck that he used to travel to and from work sites. His truck note was $815. In April, John Michael bought a used Ford F250 to replace the older truck He testified that his new truck note is $800 to 1,000 per month but did not establish the amount of the note. He now asserts that he pays a $1,000 monthly note. His bank records show a payment on May 7, 2019, in the amount of $899 to Bank of the West, which may be his truck note. Due to the timing of the new purchase as compared to the time Camille's request for support was pending, we find it would be reasonable for the trial court to conclude that it was most equitable to allow John Michael a reduction of $815 for his truck note, rather than $899.

The parties paid insurance in the amount of $1,008 per month for three vehicles, Camille's, John Michael's, and Camille's daughter's. There is no evidence regarding the premium paid for each of the three vehicles insured under

---

[2] For ease of reading and calculations, amounts with cents are rounded up or down to the nearest dollar.

4

the policy. Accordingly, we compute $336 as John Michael's pro-rata share for his vehicle.

John Michael did not present evidence of other vehicle expenses at trial, but now seeks to extrapolate Camille's testimony regarding her gas usage and claimed gas expense to calculate his fuel expenses for work. This argument lacks merit for two reasons: (1) it was not made to the trial court and (2) it is not supported by the record. Based on this evidence, the trial court could have determined that John Michael failed to satisfactorily prove the amount of monthly fuel expenditures. *Hensgens v. Hensgens*, 19-485 (La.App. 3 Cir. 12/18/19), 287 So.3d 795. Therefore, we reduce John Michael's monthly gross income by $493, $815, and $336 per month for an adjusted gross income of $17,132.

Camille's year-to-date statement of earnings ending June 1, 2019, shows her average gross monthly income for January through May 2019 was $5,783. Camille includes $250 as "other gross monthly income" on her income and expense sheet, which she testified was child support for her daughter. It is not included in her gross monthly income for purposes of child support. La.R.S. 9:315(C)(1)(d)(i).

Camille testified that in 2019, she began working more than she had previously after John Michael closed their checking account and she no longer had adequate funds to pay community expenses and support herself and Eli. She explained that she also utilized paid time off that she had accrued to obtain additional funds. Additionally, she testified that various adjustments were made to her base pay according to what shifts she worked and if she worked weekends; however, she did not show that these pay adjustments were due solely to her additional shifts. Based on this evidence, we find the trial court reasonably could

5

have subtracted $185 per month for Camille's overtime pay when calculating her monthly gross income. *See* La.R.S. 9:315(C)(3)(d)(iii), which provides that gross income does not include "[e]xtraordinary overtime . . . when, in the court's discretion, the inclusion thereof would be inequitable to a party." After subtracting overtime, we calculate Camille's adjusted gross monthly income to be $5,598.

Camille testified that she, Eli, John Michael, and his daughter are provided health and dental insurance through her employer at a total cost of $561 per month.[3] She did not show there is a difference in the cost of the insurance with regard to the principal insured and dependents. Accordingly, we calculate Eli's health insurance cost as $140.

John Michael and Camille's monthly income total $22,730. Based on the child support schedule, the basic child support award is $1,968. La.R.S. 9:315.19. The monthly cost of Eli's health insurance and his private school tuition, $262, must be added to this amount, resulting in a total child support obligation of $2,370. John Michael's monthly gross income represents 75% of his and Camille's combined monthly gross income. Accordingly, his monthly child support obligation is $1,778.

The trial court's $2,000 award exceeds this amount. Courts are allowed to deviate from the child support guidelines but must specify in writing or orally why the deviation is warranted. La.R.S. 9:315.1(B)(1). Moreover, the party seeking the deviation must prove the need for a deviation. *Carter v. Carter*, 49,517 (La.App. 2 Cir. 11/26/14), 155 So.3d 81. With no reasons given by the trial court for

---

[3] John Michael contends Camille testified that five people were insured under this insurance. Camille testified that the insurance "covers myself, Eli, John Michael, his daughter Alexis, and him." In our view, this testimony indicates she meant to say "John Michael's daughter" or "his daughter." Therefore, "and him" refers to John Michael, not another insured. As a result, Camille's insurance provides coverage for four people, not five.

deviating from the child support or proof of the need for such deviation, we find the $2,000 award for child support constitutes an abuse of the trial court's discretion and reduce it to $1,778.

John Michael next argues the trial court erred in not ordering that he has the right to claim Eli as tax deduction. Louisiana Revised Statutes 9:315.18(A) provides a presumption that the domiciliary party has the right to claim the federal and state tax dependency deductions and any earned income credit. However, La.R.S. 9:315.18(B)(1) provides:

> The non-domiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation shall be entitled to claim the federal and state tax dependency deductions if, after a contradictory motion, the judge finds both of the following:
>
> (a) No arrearages are owed by the obligor.
>
> (b) The right to claim the dependency deductions or, in the case of multiple children, a part thereof, would substantially benefit the non-domiciliary party without significantly harming the domiciliary party.

The record does not reflect that this issue was addressed to the trial court. Under Rule 1–3 of the Uniform Rules, Courts of Appeal, we "review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." We find the issue is not properly before this court and the interests of justice would not be served by our consideration of this argument for the first time on appeal; therefore, we do not consider it.

John Michael next argues the trial court erred in ordering him to pay child support retroactive to the date Camille filed her petition. Camille counters again that this issue is not properly before this court. Pointing to La.R.S. 9:321(A) which

7

provides, "Except for good cause shown, a judgment awarding . . . interim child support allowance shall be retroactive to the date of judicial demand," she also argues that the trial court did not err in making its award retroactive.

Camille testified that she had full access to her and John Michael's combined monthly incomes until December 31, 2018, and that she maintained her own account where she deposited her income. Based on this evidence and in the interest of justice, we will consider John Michael's request that his child support award not be retroactive.

> When the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence. La.R.S. 9:315.21(E). The burden is on the obligor parent to show good cause for not making the award retroactive to the date of judicial demand. The trial court is vested with much discretion in fixing awards of child support. The court's reasonable determinations shall not be disturbed unless there is a clear abuse of discretion.
>
> *Harrington v. Harrington*, 43,373, pp. 10-11 (La.App. 2 Cir. 8/13/08), 989 So.2d 838, 844. . . .
>
> In *Welborne* [*v. Welborne*, 29,479 (La.App. 2 Cir. 5/7/97), 694 So.2d 578, *writs denied*, 97-1800 (La.10/13/97), 703 So.2d 621, 97-1850 (La.10/13/97 ), 703 So.2d 623], the court refused to find good cause when the trial was suspended for over a year due to procedural delays and joint continuances. The court stated that *to "demonstrate 'good cause' for not making a child support award retroactive, [the obligor] is required to show that [the child] was not in need of the increased support* or that he was unable to pay the increased amount from the date of demand." *Id*. at 584.

*Ricardi v. Moreau*, 13-515, p. 1 (La.App. 3 Cir. 11/6/13) (unpublished opinion) (emphasis added) (case citations omitted).

There is no evidence on this issue in the record. Finding Camille's continued, uninterrupted use of community funds to be good cause for John Michael's child support obligation to not be retroactive to March 20, 2018, we

8

amend the trial court's order to provide that the award of child support is retroactive to January 1, 2019.

John Michael next argues his child support obligation should be recalculated to take into account that Eli no longer attends private school. Camille testified that Eli would no longer attend private school after May 2019 because the private school he attended went only to the eighth grade and that he would attend public high school in September 2019. We agree with John Michael that his child support obligation should be recalculated for the period beginning June 2019. Taking into account the $262 private school tuition reduction, John Michael's child support obligation is reduced to $1,581 per month effective June 1, 2019.

*Interim Spousal Support*

John Michael next assigns error with the trial court's award of $12,500 in monthly interim spousal support and ordering the award retroactive to March 20, 2018. Louisiana Civil Code Article 113 provides for an award of interim spousal support. An award of interim spousal support is based on the needs of the spouse, the ability of the other spouse to pay, and the standard of living the couple enjoyed during their marriage. *Id.* The intent of interim spousal support is to allow the spouse seeking assistance to maintain a standard of living pending the outcome of the divorce equal to that maintained during the marriage. *Smoloski v. Smoloski*, 01-485 (La.App. 3 Cir. 10/3/01), 799 So.2d 599.

"[I]nterim spousal support is grounded in the statutorily imposed duty on spouses to support each other during marriage, and thus, provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation" prior to divorce. *Brar v. Brar*, 01-370, p. 5 (La.App. 3 Cir. 10/3/01), 796 So.2d 810, 813. It also serves to maintain the equality of the

9

spouse's maintenance and support and to avoid "unnecessary financial dislocation until a final determination of support can be made." *Jones v. Jones*, 38,790, p. 15 (La.App. 2 Cir. 6/25/04), 877 So.2d 1061, 1072.

To prove a claim for interim spousal support, a wife must show that she lacks sufficient income or the ability to earn such income "to sustain the style or standard of living that [s]he enjoyed" while residing with her husband. *January v. January*, 94-882, 94-883, p. 3 (La.App. 3 Cir. 2/1/95), 649 So.2d 1133, 1136. She must also show her need for such support, which has been held to be "the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the husband's ability to pay." *Hitchens v. Hitchens*, 38,339, p. 2 (La.App. 2 Cir. 5/12/04), 873 So.2d 882, 884. The party must further show that her expenses are reasonable. *Derouen v. Derouen*, 04-1137 (La.App. 3 Cir. 2/2/05), 893 So.2d 981.

Upon close review of the parties' testimony and the documentary evidence, we find some of Camille's claimed monthly expenses are overstated in some instances, some expense amounts are reported differently in different places, and Camille was unsure as to what some reported expenses represented. For example, a review of itemized expenditures Camille documented for the period December 2017 through May 2019 shows the amounts paid for utilities, which include electricity, water, and propane, were much less than the $910 per month she claims. She explained that her reported amounts were based on three years of past records that she had maintained.

Finding the documented expenses appropriate for determining utility expenses, we observe that the highest monthly total for electricity, water, and propane for the period December 2017 through May 2019 was $889. During that

time period, the utilities averaged $119 per month for water, $247 per month for electricity, and $36 per month for propane gas. John Michael suggests that a reasonable amount for utilities is $567. We agree.

We have eliminated Camille's monthly expenses in the amount of $1,945 listed as "Credit Cards (10% of balance)." On cross-examination, Camille admitted that she did not know what the amount represented. Finding this claimed expense unsupported by the evidence, we deleted it.

At the time of the trial, Camille proved the following expenses:

| | |
|---|---:|
| House note | $1,545 |
| Utilities, water, electricity, and propane | 567 |
| Cable/Satellite | 130 |
| AT&T | 540 |
| Vehicle, maintenance, oil, and gas | 1,900 |
| Daughter's car | 570 |
| Out-of-pocket medical expenses | 290 |
| Health insurance (excludes Eli's portion) | 321 |
| Student loan incurred during marriage | 559 |
| Student loans incurred before marriage (2) | 241 |
| Sam's Club | 300 |
| Capital One | 100 |
| Sears | 86 |
| Home maintenance | 300 |
| Food and household supplies | 400 |
| Laundry and cleaning | 100 |
| Entertainment | 400 |
| Vacations | 300 |
| Personal and grooming | 150 |
| | $8,799 |

We have not included any amount for vehicle insurance because Camille testified John Michael is paying that expense. Camille's net income is $4,835, her average gross monthly income of $5,783, plus $250 child support for her daughter, less itemized deductions totaling $1,198. We do not include the deduction for medical insurance because it is included as an expense herein. After deducting Camille's average net monthly income of $4,835, Camille has $3,964 in expenses.

11

John Michael argues that expenses Camille paid on behalf of her mother and her daughter are not her "needs" and should not be included in this calculation. Generally, such expenses are not included in the calculation of interim spousal support because the payor spouse is not responsible for them. In this case, however, John Michael consented to purchasing a car for Camille's daughter and to providing her mother a phone and paid those expenses before Camille filed for divorce. Additionally, he did not prove what portion of the phone expense is attributable to her mother's phone. As a result, there is no basis for such reduction of that expense. Under these circumstances, we find these expenses represent the lifestyle Camille enjoyed during the marriage and are properly considered in determining interim spousal support. We also consider Camille's expenses for entertainment totaling $400, vacations in the amount of $300, and student loans incurred before the marriage properly considered as lifestyle factors for consideration when calculating interim spousal support. *Short v. Short*, 11-1084 (La.App. 5 Cir. 5/22/12), 96 So.3d 552.

With regard to his expenses, John Michael testified, and Camille agreed, that in 2019, he began paying the vehicle insurance $1,008, camper trailer note $365, state and federal taxes, and child support for his daughter. John Michael also contends he is entitled to reduce his gross monthly income by the amount of $3,098, which represents current tax deposits and payment toward past due taxes. His 2019 bank records show he made payments to the IRS in March, April, and May in the amount of $1,615 each, one payment to the Louisiana Department of Revenue in the amount of $157, and three payments to the Louisiana Department

12

of Justice in the amount of $342 each.[4] He testified the $1,615 and $342 payments are monthly payments for taxes but did not explain the one-time payment. With no evidence that the $157 payment will be a recurring payment, we do not consider it as a recurring expense. Accordingly, we find that John Michael is entitled to reduce his income by $1,615 per month for federal taxes and $342 per month for state taxes.

In 2019, John Michael began paying other community debts, such as, Best Buy, Credit Care, and two bank loans and paid those debts in full. Before trial, he also began paying Camille child support and additional sums for community expenses. He incurred additional debts as well: he purchased a newer model $65,000 truck for work, a new $60,000 boat, and a car. He made improvements on his girlfriend's home where he was living and paid for social outings with his girlfriend and her children.

We have reviewed John Michael's claimed expenses and find he proved the following monthly business and personal expenses for purposes of interim spousal support:

| | |
|---|---:|
| Truck note | $ 815 |
| ATV insurance | 21 |
| Camping trailer | 365 |
| Vehicle insurance | 1,008 |
| Child support for his daughter | 493 |
| Federal taxes | 1,615 |
| State taxes | 342 |
| Food and home expenses | 300 |
| Car note | 833 |
| | $5,792 |

John Michael includes food and home expenses in the amount of $300 and vehicle maintenance and gas expenses in the amount of $1,000. He did not testify

---

[4] These are the only bank records in the record for John Michael's account.

13

about these expenses or identify payments for these items in his bank records. He did, however, testify that he bought a car, and his bank records show that he pays $833 per month to Wells Fargo Auto. John Michael explained that in exchange for not paying rent or utilities to live with his girlfriend, he allows her to drive his car. We find it reasonable for John Michael to include this expense in these amounts because he has no other living expenses. We further note that although John Michael argued the amounts Camille assigns for some of her expenses are unreasonably high, we did not reduce those amounts finding them reasonable and in line with the monthly expenditures and lifestyle maintained by the parties during the marriage.

The child support award, as amended by this court, has the effect of providing Camille with $6,613 per month ($4,835 + 1,778) until May 31, 2019, then $6,416 ($4,835 + 1,581) to cover her and Eli's expenses and has the effect of providing John Michael with living expenses of $11,206 per month ($18,776 - 5,792 - 1,778) until May 31, 2019, then $11,403 ($18,776 - 5,792 - 1,581) thereafter. Based on these calculations, we find the trial court's award of interim spousal support excessive and reduce it to $2,250 for the period January 1 through May 29, 2019, and increase it to $2,500 thereafter.

As with his child support obligation, John Michael urges that the trial court erred in ordering its award of interim spousal support be retroactive to March 20, 2018. For the reasons discussed previously, good cause exists for not making the award for interim spousal support retroactive to March 20, 2018, but to January 1, 2019.

14

## DISPOSITION

The trial court's judgment is amended to reduce Camille Charrier's award for child support to $1,778 beginning January 1, 2019, which amount is reduced to $1,581 beginning June 1, 2019, and to reduce Camille's Charrier's award for interim spousal support to $2,250 beginning January 1, 2019, then increased to $2,500 as of June 1, 2019. The parties are to account to each other for any amounts made and/or received beginning January 1, 2019. Costs are divided equally between the parties.

**AMENDED AND AFFIRMED AS AMENDED.**


This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.