**SHELLY BERNSTEIN**         \*         **NO. 2019-CA-1106**

**VERSUS**         \*

       **COURT OF APPEAL**

**KENNETH D. BERNSTEIN**         \*

       **FOURTH CIRCUIT**

       \*

       **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-04737, DIVISION "K"
Honorable Bernadette D'Souza, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*
(Court composed of Judge Edwin A. Lombard, Judge Joy Cossich Lobrano, Judge Dale N. Atkins)


Marc D. Winsberg
Jonathan D. Gamble
WINSBERG & ARNOLD, LLC
650 Poydras Street, Suite 2050
New Orleans, LA 70130


       COUNSEL FOR PLAINTIFF/APPELLANT


Andrew T. Lilly
Lilly PLLC
4907 Magazine Street
New Orleans, LA 70115

Jeffrey Walter Bennett
9515 Jefferson Highway
River Ridge, LA 70123


       COUNSEL FOR DEFENDANT/APPELLEE


               **AFFIRMED**
            **FEBRUARY 10, 2021**

*DNA*
*EAL*
*JCL*

This is a child support and interim spousal support case. Both parties appeal the trial court's September 9, 2019 judgment, which ordered Appellee/Cross-Appellant Kenneth D. Bernstein ("Mr. Bernstein") to pay Appellant/Cross-Appellee Shelly Bernstein ("Mrs. Bernstein") $4,082.00 per month in child support; $4,000.00 per month in interim spousal support; an additional $200.00 per month toward arrearages; and which extended the interim spousal support award for good cause beyond 180 days after the judgment of divorce. For the reasons that follow, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mr. and Mrs. Bernstein were married in New Orleans on December 17, 1999. Of this marriage, three children were born. The parties physically separated on April 1, 2016, after Mrs. Bernstein discovered Mr. Bernstein was abusing prescription drugs. On September 21, 2016, Mrs. Bernstein was awarded exclusive use and occupancy of the parties' former marital home in New Orleans. The parties were also granted joint custody of the parties' three minor children on an interim basis, pending the completion of a custody evaluation.

1

On February 6, 2017, Mrs. Bernstein filed a Petition for Divorce Pursuant to La. C.C. art. 102. In her petition, she requested to be granted continued use and occupancy of the former marital home, child support, and interim spousal support. Mr. Bernstein filed an Answer and Reconventional Demand on May 9, 2017, seeking a divorce pursuant to La. C.C. art. 103(1). Mrs. Bernstein filed an Answer on June 16, 2017. Trial on Mrs. Bernstein's Rules for Child Support and Interim Spousal Support was originally set for July 27, 2017.

The record shows that Mr. Bernstein moved to continue the July 27, 2017 trial. The trial court granted the continuance, and the trial was reset for September 7, 2017. On September 6, 2017, the day before trial was set to commence, the trial court again granted Mr. Bernstein a continuance of the trial, and scheduled the trial on Mrs. Bernstein's Rules for Child Support and Interim Spousal Support for January 23, 2018.

The parties were divorced on September 7, 2017. That same day, the parties entered into an Interim Consent Judgment, which was signed by the trial court on October 26, 2017. The Interim Consent Judgment required Mr. Bernstein, on an interim basis, to: (1) pay $3,000.00 per month directly to Mrs. Bernstein as child support; (2) maintain the children's health insurance; (3) pay the "meet fees" associated with the children's gymnastics activities; (4) pay the cell phone bill for Mrs. Bernstein and the minor children; and (5) pay the mortgage, taxes, and insurance on the former family home, subject to his right to claim reimbursement. Mr. Bernstein was not required to pay any uncovered medical or extracurricular expenses for the children. The Interim Consent Judgment further granted visitation to Mr. Bernstein with the parties' two younger children, and Mr. Bernstein was

2

ordered to commence reconciliation therapy with the parties' oldest child. Mr. Bernstein was not ordered to pay any spousal support.

Thereafter, on January 12, 2018, Mrs. Bernstein filed a Motion for Advance of Community Funds, requesting that the court award her an advance of her share of community funds, specifically a portion of the parties' $59,909.00 federal and state tax refunds from the 2016 tax year. In her motion, Mrs. Bernstein noted her concern that her Rules for Child Support and Interim Spousal Support, scheduled for January 23, 2018, would be continued yet again because Mr. Bernstein had not produced the necessary documents to determine his income through discovery.

On January 22, 2018, after Mr. Bernstein's counsel suffered a serious injury which prevented him from representing Mr. Bernstein in trial, the trial court granted another continuance in favor of Mr. Bernstein, and continued the January 23, 2018 trial of Mrs. Bernstein's Rules for Child Support and Interim Spousal Support. On January 31, 2018, Mrs. Bernstein requested her motion for advance on community funds be reset on an expedited basis. She alleged that she desperately needed the advance of community funds to maintain the household for her and the children. Eventually, on February 6, 2018, the trial court reset all other matters previously scheduled for January 23, 2018—including Mrs. Bernstein's Rules for Child Support and Interim Spousal Support and her motion for advance of community funs—to July 23, 2018.

The July 23, 2018 trial was reset at Mrs. Bernstein's request due to the unavailability of her financial expert, and was again reset due to her counsel's unavailability to August 29, 2018.

On April 3, 2018, Mrs. Bernstein filed a Rule for Contempt and for Attorney's Fees and Court Costs (the "First Rule for Contempt"), requesting that

3

the trial court hold Mr. Bernstein in contempt of court for failing to pay the mortgage on the former family home as ordered pursuant to the Interim Consent Judgment. This resulted in the parties entering into another consent judgment to put the former marital home up for sale.

On August 27, 2018, two days before the scheduled trial, Mr. Bernstein abruptly discharged his second attorney in this matter. Mr. Bernstein then appeared before the court and orally requested a continuance of the issues set for trial. Over Mrs. Bernstein's objection, the court granted Mr. Bernstein's oral motion for a continuance and ordered that all matters pending between the parties be continued without date. The court further scheduled a status conference for September 13, 2018, during which time Mr. Bernstein's new counsel and counsel for Mrs. Bernstein would select a new trial date. Finally, the court ordered that pending the new trial date and in light of Mr. Bernstein's representation that he would fail a drug test, Mr. Bernstein's physical custody time with the parties' minor children was to be supervised. Thereafter, the trial court reset trial on Mrs. Bernstein's Rules for Child Support and Interim Spousal Support and the parties' competing Rules for Custody on April 12, 2019.

On December 13, 2018, Mrs. Bernstein filed a motion to compel discovery. Counsel for the parties appeared before the trial court for hearing on the motion on February 6, 2019. Mrs. Bernstein alleged that Mr. Bernstein's responses to discovery requests were originally due on July 12, 2018. After being granted several extensions to respond to discovery requests, however, Mr. Bernstein had still not produced discovery as of December 7, 2018. At the hearing on February 6, 2019, the parties agreed—and the trial court ordered—that Mr. Bernstein would produce his discovery responses no later than February 20, 2019. On February 28,

4

2019, when Mr. Bernstein still had not provided his discovery responses as ordered, Mrs. Bernstein filed a motion for relief pursuant to La. C.C.P. art. 1471,[1] asking the trial court to hold Mr. Bernstein in contempt of court and to disallow any evidence of his expenses or opposition to Mrs. Bernstein's calculation of his income at trial. After a hearing, the trial court held Mr. Bernstein in contempt of court, ordered him to pay attorney's fees and court costs, and ruled that Mr. Bernstein would only be allowed to present evidence of his income and expenses "at the court's discretion" at the trial of the support issues, pursuant to La. C.C.P. art. 1471. The trial court also granted Mr. Bernstein's April 4, 2019 Motion to

---

[1] La. C.C.P. art. 1471 provides:

A. If a party or an officer, director, or managing agent of a party or a person designated under Article 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1464 or Article 1469, the court in which the action is pending may make such orders in regard to the failure as are just, including any of the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a final default judgment against the disobedient party upon presentation of proof as required by Article 1702.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

*** 

C. In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Continue regarding the parties' competing rules for child custody but ordered Mr. Bernstein to reimburse Mrs. Bernstein for the cost paid to the custody evaluator for her court appearance in the amount of $2,000.00. Additionally, the trial court ordered Mr. Bernstein to pay Mrs. Bernstein attorney's fees in the amount of $1,599.00 and court costs in the amount of $72.00, for a total of $3,671.00. As of June 12, 2019, Mr. Bernstein had not paid the ordered amount, and Mrs. Bernstein filed a second rule for contempt of court.

The bench trial on Mrs. Bernstein's Rules for Child Support and Interim Spousal Support commenced on April 12, 2019. On April 12, 2019, the trial court heard testimony from Mrs. Bernstein and her financial expert, Jeffrey E. Meyers, CVA, MAFF, CFE. Trial was recessed and resumed on June 24, 2019, wherein the trial court heard additional testimony from Mr. Meyers based on documentation that Mr. Bernstein provided after the first day of trial and from Mr. Bernstein's financial expert, Jon Folse, CPA. The trial court also heard testimony from Mr. Bernstein's brother, Paul Bernstein, and Mr. Bernstein himself. The record reflects that, on June 23, 2019, the night before trial was to resume on June 24, 2019, Mr. Bernstein forwarded additional discovery materials to counsel for Mrs. Bernstein at 10:55 p.m., which included a statement of Mr. Bernstein's income and expenses. The trial court disallowed any evidence of Mr. Bernstein's expenses to be admitted at trial, as sanction for his late discovery responses.

After trial, the parties submitted post-trial memoranda. On September 9, 2019, the trial court rendered judgment on Mrs. Bernstein's Rules for Child Support and Interim Spousal Support. The trial court ordered Mr. Bernstein to pay $4,082.00 per month in child support dating back to the date of demand, with arrears to be calculated by the parties by taking in consideration past support

6

payments made by Mr. Bernstein. The trial court awarded interim spousal support in the amount of $4,000.00 per month, with a credit due to Mr. Bernstein for any excess paid once final spousal support is calculated. The trial court further found that the interim spousal support award should be extended for good cause beyond 180 days after the rendering of the judgment of divorce. Finally, Mr. Bernstein was also ordered to pay an additional $200.00 per month towards his arrears until the balance was paid in full.

From this judgment, both parties appeal.

## DISCUSSION

Mrs. Bernstein assigns the following errors on appeal: (1) the trial court erred in its calculation of Mr. Bernstein's income in calculating the child support award; (2) the trial court erred in failing to order each party to pay its respective pro-rata percentages of certain add-on expenses of the minor children, despite noting that these expenses should be paid in its reasons for judgment; (3) the trial court erred in ruling that Mr. Bernstein would be owed a credit for any interim spousal support payments made after March 6, 2018—the day the interim spousal support award would have expired by law—if the final spousal support award is lower than the interim spousal support award; and (4) the trial court erred in ordering Mr. Bernstein to only pay $200 monthly toward arrears.

Countering, Mr. Bernstein assigns the trial court's extension of the interim spousal support as error, arguing that he was not put on notice that Mrs. Bernstein was seeking such an extension. He also claims the trial court erred in extending the award because good cause for the extension was not established, and because the trial court did not set a certain end date for the extension.

7

For ease of discussion, the parties assignments of error will be addressed in four different sections: (1) calculation of Mr. Bernstein's income for purposes of determining the child support award; (2) failure to include "add-on" expenses to the child support award; (3) the extension of the interim spousal support award and Mr. Bernstein's credit; and (4) Mr. Bernstein's order to pay $200 monthly toward arrears.

### Calculation of Mr. Bernstein's Income for the Child Support Award

In her first assignment of error, Mrs. Bernstein argues the trial court erred in calculating Mr. Bernstein's gross monthly income for purposes of calculating child support. Specifically, Mrs. Bernstein contends that the trial court improperly determined that Mr. Bernstein's gross monthly income was $28,292. Mrs. Bernstein maintains the trial court ignored testimony from her financial expert Mr. Meyers, as well as evidence that showed Mr. Bernstein received income in the form of a salary from his employer, Tire Town, and also received other cash distributions from his interests in his family business, Delta World Tire, and that Delta World Tire made direct payments to the Internal Revenue Service to cover Mr. Bernstein's personal tax debt. Mrs. Bernstein contends that the trial court should have included these payments in its calculation of Mr. Bernstein's income, and accordingly, should have concluded that Mr. Bernstein's gross monthly income was $41,626 for purposes of calculating the child support award.

Based on the principle that "child support is a continuous obligation of both parents, whose current income the child is entitled to share, as the child should not be the economic victim of a divorce or an out-of-wedlock birth," La. R.S. 9:315 *et seq.* provides the guidelines for a trial court's determination of child support by calculating the combined gross income of both parents. *State, Dep't of Soc. Servs.*

8

*ex rel. D.F. v. L.T.*, 2005-1965, p. 5 (La. 7/6/06), 934 So.2d 687, 690. The child support "obligation must be administered and fairly apportioned between parents in their mutual financial responsibility for their children; toward that end, guidelines balance the needs of children with the means available to parents." *Id.*, 2005-1965, pp. 5-6, 934 So.2d at 690. Importantly, "[t]he trial court's discretion in setting the amount of child support is structured and limited." *Id.*, 2005-1965, p. 5, 934 So.2d at 690.

There is a rebuttable presumption that the amount of child support set by use of the child support guidelines is the proper amount. La. R.S. 9:315.1(A). The court may deviate from the guidelines, however, if the application of the guidelines would not be in the best interest of the children or if it would be unequitable to the parties. La. R.S. 9:315.1(B)(1). If the trial court deviates from the guidelines, the trial court "shall give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines" and "[t]he reasons shall be made part of the record of the proceedings." *Id.* "The trial court's failure to follow the mandatory procedure for deviation set forth in La. R.S. 9:315.1, constitutes legal error which precludes review of the deviation under the manifest error standard of review." *Dufresne v. Dufresne*, 2010-963, p. 8 (La. App. 5 Cir. 5/10/11), 65 So.3d 749, 755 (citing *State, Dept. of Social Services ex rel. D.P. v. Pineyro*, 2008-1213, p. 5 (La. App. 5 Cir. 4/7/09), 13 So.3d 193, 195-96.

A trial court's child support award is entitled to great weight on appeal. *Langley v. Langley*, 2007-0754, p. 3 (La. App. 4 Cir. 3/26/08), 982 So.2d 881, 883 (citation omitted). Thus, "the standard of review in a child support case is manifest

9

error" and "[g]enerally, an appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error." *D.F.*, 2005-1965, p. 6, 934 So.2d at 690 (citing *Reeves v. Reeves*, 36,259 (La. App. 2 Cir.2002), 823 So.2d 1023, 1027). *See also* La. R.S. 9:315.17.

In calculating a parent's gross income for child support purposes, it is important to note that "income" is not limited to salaries. *Dejoie v. Guidry*, 2010-1542, p. 8 (La. App. 4 Cir. 7/13/11), 71 So.3d 1111, 1117. "Instead, 'gross income' includes 'income from any source,' such as salaries, dividends and interest." *Id.* (citing La. R.S. 9:315(C)(3)(a)). "Also, 'gross income' includes significant in-kind payments from self-employment which reduce the parent's personal living expenses as well as a parent's closely held corporation's gross receipts 'minus ordinary and necessary expenses required to produce income.'" *Id.* (citing La. R.S. 9:315(C)(3)). A parent's gross income can include in-kind payments, which "include but are not limited to a company car, free housing, or reimbursed meals." La. R.S. 9:315(C)(3)(b).

In its written reasons for judgment, the trial court noted that Mr. Bernstein earned income from Tire Town and Delta World Tire, as well as numerous real estate entities. The trial court recounted that it heard extensive testimony about the direct payments made by Delta World Tire to the Internal Revenue Service to cover Mr. Bernstein's tax liability. Noting the First Circuit's decision in *Melancon v. Melancon*, 2007-0576 (La. App. 1 Cir. 11/2/07), 2007 WL 3227189, the trial court held that it would deviate from the guidelines in calculating Mr. Bernstein's income because using the direct payments from Delta World Tire to the Internal Revenue Service in calculating Mr. Bernstein's income would be inequitable to the parties.

In *Melancon*, the wife held an interest in her family's business, for which she received a Schedule K-1 for income tax purposes that listed the capital gains and income attributable to her interest in the company. Testimony at trial, however, showed that the wife never received any funds from the company. Instead, they were retained and reinvested in the company. The trial court found that this interest should not be used in calculating the wife's income because she never actually received any money and had no authority to cause the distributions to be made.

Mr. Bernstein's tax distributions are similar here. Mr. Paul Bernstein, the President of Delta World Tire and Mr. Bernstein's brother, testified at trial that the cash earnings are retained by Delta World Tire, although treated as taxable income under the U.S. Internal Revenue Code. The earnings are used by Delta World Tire to grow the business and the money is never actually distributed. Likewise, Mr. Bernstein's expert CPA Mr. Folse also testified that there is an agreement in place for Delta World Tire to cover the income tax for its shareholders, such as Mr. Bernstein, of Delta World Tire and the shareholders of Delta World Tire's flow-through entities. Thus, the record shows that Mr. Bernstein never actually receives the money; rather, it is paid directly to the Internal Revenue Service or reinvested by Delta World Tire. Mr. Bernstein has no control over the payments or when they are disbursed. Thus, he could not use it for support purposes. The record supports the court's finding that using these direct payments would be inequitable to the parties, and it was not manifestly erroneous.

The record further supports the trial court's determination of Mr. Bernstein's income, as Mrs. Bernstein's financial expert Mr. Meyers testified that Mr. Bernstein's taxable income was $339,500 annually, or $28,292 per month in 2017. Though he noted that the businesses may have done better in later years, he could

11

not say with certainty that the businesses in fact had done better or what the taxable income should or would be. Based on the record, and the fact that the trial court articulated specific reasons for deviating from the guidelines—finding that to apply them mechanically would be inequitable—it cannot be said that the trial court's calculation of income and its child support award of $4,082 based on the parties' combined income is manifestly erroneous. We affirm the trial court's calculation of Mr. Bernstein's income and the child support award amount.

***Failure to Include "Add-On" Expenses in Child Support Award***

Next, we turn to Mrs. Bernstein's assignment of error regarding the trial court's failure to order that each of the parties be responsible for their respective pro-rata percentages of the minor children's "add on" expenses for extracurricular activities and medical expenses, despite indicating in its reasons for judgment that it would make such an order.

La. R.S. 9:315.6 provides:

By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:

(1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.

(2) Any expenses for transportation of the child from one party to the other.

(3) Special expenses incurred for child rearing intended to enhance the health, athletic, social, or cultural development of a child, including but not limited to camp, music or art lessons, travel, and school sponsored extracurricular activities.

The trial court's decision to add expenses under La. R.S. 9:315.6 to the basic child support obligation is discretionary and will not be disturbed absent an abuse of discretion. *See Guste v. Guste*, 2016-0872, p. 7 (La. App. 4 Cir. 4/19/17), 217

12

So.3d 542, 546; *A.S. v. D.S.*, 2014-1098, p. 19 (La. App. 4 Cir. 4/8/15), 165 So.3d 247, 258; *Millet v. Braud*, 2015-363, p. 6 (La. App. 5 Cir. 11/19/15), 179 So.3d 849, 852.

Mrs. Bernstein argues, essentially, that because the trial court's reasons for judgment indicate that the trial court would award "add-on" expenses, it was error for the trial court not to make such an order in its child support award in its judgment. "However, reasons for judgment only set forth the basis for the court's holding and are not binding." *Scott v. Am. Tobacco Co., Inc.*, 2015-1352, p. 11 (La. App. 4 Cir. 5/25/16), 195 So.3d 624, 630 (internal citations omitted). Nevertheless, an appellate court may use a trial court's written reasons for judgment "to gain insight into the district court's judgment." *Wooley v. Lucksinger*, 2009-0571, p. 78 (La. 4/1/11), 61 So.3d 507, 572. Importantly, "[i]f a disparity exists between the judgment and the written reasons for judgment, the final judgment is definitive." *Davis v. Farm Fresh Food Supplier*, 2002-1401, p. 3 (La. App. 1 Cir. 3/28/03), 844 So.2d 352, 354 (citing *Sanford v. Sanford*, 468 So.2d 844, 845 (La. App. 1 Cir. 1985); *Carner v. Carner*, 1997-0128, p. 5 (La. App. 3 Cir. 6/18/97), 698 So.2d 34, 36).

The language of the statute itself shows that the trial court has discretion not to add expenses under La. R.S. 9:315.6 to the basic child support obligation and such a ruling is reviewed for abuse of discretion. Additionally, where, as here, there is a discrepancy between the judgment and the reasons for judgment, the judgment controls. Therefore, this Court must review the trial court's judgment which did not add expenses under La. R.S. 9:315.6 for abuse of discretion. Because the only significant testimony on the children's "add-on" expenses presented at trial was in relation to their private school tuition and that the tuition is

already paid by Mr. Bernstein's family business, the record does not support a finding that the trial court abused its discretion. This assignment of error lacks merit.

### *Extension of Interim Spousal Support and Mr. Bernstein's Credit*

The focus of Mr. Bernstein's appeal is his argument that the trial court erred in extending Mrs. Bernstein's award of interim spousal support. Mr. Bernstein contends that he was ambushed by the extension because Mrs. Bernstein never raised the issue prior to or during trial and only raised it after trial in her post-trial memorandum. Mr. Bernstein also contends that, because the issue was not raised before or during trial, there was no evidence which supports a finding of "good cause" for the extension. He also complains that the trial court erred in, according to Mr. Bernstein, assigning no end date for the interim spousal award.

Mrs. Bernstein counters that the trial court properly found good cause to extend the interim spousal support award, but erred in awarding Mr. Bernstein a credit for any interim spousal support payments he would make that may be over and above the final spousal support award.

La. C.C. art. 113 provides:

> Upon motion of a party, the court may award a party interim spousal support based on the needs of that party, the ability of the other party to pay, any interim or final child support obligation, and the standard of living of the parties during the marriage. An award of interim spousal support shall terminate one hundred eighty days from the rendition of a judgment of divorce, except that the award may extend beyond one hundred eighty days but only for good cause shown.

"The purpose behind interim spousal support is to ensure that the parties maintain the status quo enjoyed during the marriage while the divorce is pending." *Hight v. Hight*, 2017-0566, p. 5 (La. App. 4 Cir. 12/13/17), 234 So.3d 1143, 1147 (citing *Evans v. Evans*, 49,160, p.3 (La. App. 2 Cir. 6/25/14), 145 So.3d 1093,

1094-95). "The spouse seeking interim spousal support bears the burden of proving his or her entitlement to such support." *Id*. (citing *Loftice v. Loftice*, 2007-1741, p. 5 (La. App. 1 Cir. 3/26/08), 985 So.2d 204, 207). "In order to establish that need, it must be shown that the requesting spouse lacks sufficient income to preserve the standard of living they previously enjoyed while married." *Id*. (citing *Brown v. Brown*, 44,989, p. 5 (La. App. 2 Cir. 1/27/10), 31 So.3d 532, 536). "Once that spouse has demonstrated their need, then the court will look to the ability of the other spouse to pay interim support." *Id*., 2017-0566, pp. 5-6, 234 So.3d at 1147.

A trial court's determinations on interim spousal support is reviewed under the abuse of discretion standard. *Molony v. Harris*, 2009-1529, p. 2 (La. App. 4 Cir. 10/14/10), 51 So.3d 752, 756. Accordingly, "[i]f the trial court record supports the trial court's reasoning and conclusions regarding the means of the payor spouse and his or her ability to pay, no abuse of discretion will be found." *Hight*, 2017-0566, p. 5, 234 So.3d at 1147 (citing *Molony*, 2009-1529, p. 2, 51 So.3d at 756). The trial court's factual findings will not be set aside unless there is manifest error. *Id*.

As La. C.C. art. 113 makes clear, an award of interim spousal support expires by operation of law 180 days after the judgment of divorce is rendered. The award can be extended "for good cause shown," however.

"Whether 'good cause' exists for the extension of interim support must be determined on a case-by-case basis." *Hogan v. Hogan*, 49,979, p. 23 (La. App. 2 Cir. 9/30/15), 178 So.3d 1013, 1026 (citing *Guillory v. Guillory*, 2008–1375 (La. App. 3d Cir.4/1/09), 7 So.3d 144). "It must constitute, if not a compelling reason, certainly a reason of such significance and gravity that 'it would be inequitable to deny an extension of such support.'" *Id*., 49,979, pp. 23-24, 178 So.3d at 1026

15

(quoting *Roan v. Roan*, 38,383, p. 21 (La. App. 2 Cir. 4/14/04), 870 So.2d 626, 639). *Roan* clarified that "good cause" pursuant to La. C.C. art. 113 "requires an affirmative showing by the party seeking an extension of interim support that the extension is really and genuinely needed, and the purpose for which it is sought is legitimate, not calculated to cause hardship or to obtain as much spousal support as possible for as long as possible." *Roan*, 38,383, p. 22, 870 So.2d at 639.

Here, the parties were divorced on September 7, 2017. Thus, the interim spousal support award would have terminated on March 6, 2018—180 days after the parties were divorced. The trial court extended the award of interim spousal support, finding that Mrs. Bernstein had shown "good cause," but ordered that Mr. Bernstein would be entitled to a credit for whatever excess he has paid since the date of termination of interim spousal support. We find that this was not an abuse of discretion.

The record demonstrates that, had the trial court not extended the interim spousal support award, it would have terminated over a year before trial on Mrs. Bernstein's Rule for Interim Spousal Support finally commenced. During that time, the record shows that Mr. Bernstein failed to meet many of his obligations, both financially and with respect to production of information for the determination of child and spousal support, and that Mrs. Bernstein was struggling financially as a result. Specifically, Mr. Bernstein failed to abide by the October 26, 2017 consent judgment to pay the mortgage, taxes, and insurance on the former family home. He also failed multiple times to produce discovery in this matter and caused undue delay of the commencement of the trial on child support and spousal support. As a result, the trial commenced over two years after the date of demand, mostly due to the actions of Mr. Bernstein. Further, the record shows that Mr.

Bernstein failed to pay attorney's fees, court costs, and expert fees that Mrs. Bernstein incurred as a result of his continuances and that he continued to abuse illicit substances, which resulted in an order of supervised visitation with the parties' minor children.

Additionally, Mrs. Bernstein testified at trial that she has primary custody of the parties' three minor children and that they reside with her in the parties' former marital home in New Orleans. She testified that, though Mr. Bernstein agreed to pay $3,000 monthly in child support, in addition to the children's "meet fees" and the mortgage, taxes, and insurance on the former marital home, he consistently failed to timely make those payments. Indeed, the record shows that Mrs. Bernstein was forced to file motions for contempt for his failure to make the mortgage payments as ordered. The record also shows that, because Mrs. Bernstein made less than $20,000 annually working part-time as a landscaper and at Pottery Barn Kids, she had to take out loans from her family and Mr. Bernstein's family to support herself and the parties' children. She also had to ask for an advance on the community property funds in order for her to pay her and the children's living expenses, a request she made while noting her (legitimate) concern that her rules for support would again be delayed. Under these facts, we cannot say the trial court's decision to extend the interim spousal support award was an abuse of discretion.

The contention that the extension of the interim spousal support was improper because Mrs. Bernstein did not specifically plead that the trial court extend the award until her post-trial memorandum is rejected. The plain language of La. C.C. art. 113, as the court in *Hogan* pointed out, "does not specifically require the filing of an additional pleading to request an extension of the 180-day

17

period." 49,979, p. 25, 178 So.3d at 1026. Mrs. Bernstein requested both interim and final spousal support, thus she did properly raise the issue of interim spousal support.

Finally, we find that the trial court did, contrary to Mr. Bernstein's representation, set an end date for the spousal support award: when the final spousal support award is entered. We note that either party is free to set the issue of final spousal support for trial, which belies Mr. Bernstein's contention that the award extends into perpetuity and is onerous. We further find that the trial court did not err in granting Mr. Bernstein a credit for any payments he may have made above the final support award once the award is determined. To not grant such a credit would be inequitable. The trial court's interim spousal award judgment, along with the extension and credit, is affirmed.

### *Order for Mr. Bernstein to Pay $200 Toward Arrearages*

In her last assignment of error, Mrs. Bernstein argues that the trial court erred in ordering Mr. Bernstein to pay $200 per month toward any arrearage because, as Mrs. Bernstein contends, the total arrearage owed would be over $100,000. Essentially, Mrs. Bernstein contends that it would take too long to pay off the arrearage. Like other judgments regarding support, the standard of review is abuse of discretion. *See State, Dep't of Soc. Servs. ex rel. D.F. v. L.T.*, *supra*.

Mrs. Bernstein has not shown that the trial court abused its discretion in ordering Mr. Bernstein to pay $200 monthly toward an arrearage. As is clear from the record, the total amount of the arrearage had not yet been calculated, rendering Mrs. Bernstein's argument unpersuasive that the order to pay $200 monthly toward the arrearage would take too long to pay. Additionally, given evidence of Mr. Bernstein's income at trial, and the fact that he was ordered to pay a total of

$8,082.00 per month in support—not accounting for his own living or other expenses—the record does not support a finding that the trial court abused its discretion. This assignment of error lacks merit.

## DECREE

For the foregoing reasons, we affirm the trial court's September 9, 2019 judgment.

**AFFIRMED**